THOMPSON, J.
 

 This is a devolutive appeal from an order granting a preliminary injunction against the Public Service Commission, and the legal question presented is whether or not the Public Service Commission has been given the authority to supervise, regulate, and control the construction of a traffic toll bridge and to fix the rates and fares to be charged for the use of said bridge in advance of its construction.
 

 On February 26, 1925, the highway commission granted a franchise to certain designated individuals to build a traffic toll bridge with necessary approaches and highway connections over and across Lake Pontchartrain , from a point at or near Point Aux Herbes in Orleans parish to a point at or near Slidell in St. Tammany parish.
 

 The franchise was subsequently assigned by the grantees to the plaintiff in the present suit.
 

 The assignment was approved by the highway commission.
 

 In accordance with the terms and stipulations of the contract, the bridge company began to make the necessary preliminary arrangements, financially and otherwise, for the construction of the bridge, when the Public Service Commission issued an order directing the bridge company to desist and to cease all operations in connection with the building of said proposed bridge until the said bridge company shall have filed with the commission and obtained its approval of the plans and specifications.
 

 The bridge company was cited to appear before the commission on a day fixed and'to file with said commission the plans and specifications for said bridge and to make suggestions as to rates, fares, and tolls to be collected for the use of said bridge.
 

 In the meantime and until further orders of the commission the contract for the construction of the bridge was suspended, annulled, and set aside.
 

 Following the above-mentioned order the plaintiff filed this suit for an injunction restraining the Public Service Commission from carrying into effect the aforesaid order.
 

 The question propounded in the beginning of thi§ opinion was definitely answered in the suit of Talbot v. Louisiana Highway Commission, 159 La. 910, 106 So. 377, and the companion suits of Orr v. Highway Commission, 159 La. 930, 106 So. 384, and Public Service Commission v. Highway Commission, 159 La. 932, 106 So. 385, wherein the validity of the particular contract here involved was put at issue by the plaintiffs in those suits.
 

 We there held that the proposed toll bridge cannot be under the supervision, regulation,
 
 *877
 
 or control of the Public Service Commission, or be a public utility before it is built.
 

 “If we assume that the Public Service Commission will have authority to fix the rates or schedule of tolls for the bridge when it is completed and ready for traffic, there is no cause for the plaintiff or any other taxpayer to complain that the Public Service Commission does not fix the rates, or approve the schedule of tolls, before the bridge is built.
 

 “On the other hand, if we assume that the bridge will be under the supervision, regulation, or control of the Public Service Commission, when the bridge will be built and in service,
 
 it is certain that the letting of the contract, the fixing of the rates or schedule of tolls, cannot he now under the supei'vision, regulation, or control of the Public Service Commission.”
 
 (Underscoring by writer of this opinion.)
 

 We further said in the Talbot Case:
 

 “Besides, as we have said, the argument in this case is, not that the proposed toll bridge will come under the supervision, regulation, and control of the Public Service Commission when the bridge is completed, but that the right to grant a franchise to construct the bridge is already under the jurisdiction of the Public Service Commission. We agree with the district judge that it is not so.”
 

 The decision in the cases referred to is conclusive against the argument and contention made in the present ease to the effect that the Constitution of 1921 conferred upon the Public Service Commission the , authority to supervise, govern, and control the construction of a traffic toll bridge and to fix rates and tolls before said bridge is built.
 

 That the court so held in the cited cases is ■ virtually conceded by the learned counsel for the commission, but he questions the correctness and soundness of the ruling.
 

 A reconsideration of the matter has not enabled us to discover any sufficient reason for receding from the opinion there expressed.
 

 It is contended that the Legislature, by Act No. 224 of 1926, has declared a public service toll bridge to be a public utility, and every person, association, or corporation owning or operating a toll bridge. to be a common carrier, and has placed such bridges and such common carriers under the control and jurisdiction of the Public Service Commission.
 

 • The answer to the argument, in so far as it seeks to bring the present controversy within the terms of the statute, is a very simple one. What the Legislature meant, as the language of the statute clearly expresses, was to place
 
 toll bridges
 
 and the
 
 owners
 
 and
 
 operators
 
 of such
 
 bridges
 
 under the supervision and control of the Public Service Commission. A franchise or contract to build a bridge is not a bridge or a public utility in any sense of the term. Nor can the grantee or holder of such franchise or contract be regarded as the owner and operator of a bridge not in existence and which may never exist.
 

 The first section of the act referred to defines public service toll bridges as bridges privately owned for the use of which tolls are charged.
 

 Now a bridge not in existence cannot be said to be a bridge privately- owned and the builder of such a bridge cannot be classed as an owner or operator of a bridge for toll until the bridge is actually built.
 

 The language of the act is so clear and unambiguous and the meaning is so apparent as to leave no room for judicial interpretation.
 

 If it had been the purpose of the Legislature to transfer from the highway commission to the Public Service Commission the authority to supervise the construction of toll bridges and to vest in the latter commission the authority to fix and determine the rates and tolls to be charged for the use of such bridges before they were built, or if the Legislature had intended to confer concurrent jurisdiction, in the respect mentioned, upon - the two commissions, it seems to us that words could have been easily found to express such intention. That the Legislature
 
 *879
 
 did not: so intend is perfectly obvious from the language of the statute.
 

 And this is made more emphatic by the proviso of the statute. which declares that the provisions of the act shall only apply to toll bridges after they have been
 
 completen
 
 and placed in
 
 actual
 
 operation.
 

 It is argued, however, with reference to the proviso, that, while the Legislature can declare a property to be a public utility, it is not competent to fix a time at which the jurisdiction of the Public Service Commission over such utility may attach.
 

 In other words, that, when a contract is entered into for the construction of a public utility, such proposed utility from that moment falls under the control, supervision, and regulation of the Public Service Commission.
 

 The contention is based on that provision of paragraph 2, §
 
 4,
 
 of article 6 of the Constitution, which declares that the power and authority of the commission’shall include and affect all matters and things ¿connected with concerning, and growing out of. the service to be given or rendered by public utilities which may be made subject to the control of the commission.
 

 The answer is to he found in the last clause of the paragraph and section referred to, and it is this: The right of the Legislature to place other public utilities than those specially enumerated under the control of the Public Service Commission and to confer on that commission other powers is unlimited by any other provision of the Constitution.
 

 If, therefore, the Legislature has the power to declare toll bridges public utilities and to place them under the control of the Public Service Commission, and this power is unlimited, which is conceded, then it logically follows that the Legislature has the power and discretion to declare when such bridges are to become public utilities and to fix the time at which such bridges shall be subject to the control of the Public Service Commission.
 

 Our opinion, however, is that the proviso in the statute referred to was mere surplus-age and was only introduced into the act so as to leave no mistake as to the purpose and meaning of the statute.
 

 The injunction herein was properly issued, and the judgment appealed from is affirmed
 

 LAND and BRUNOT, JJ., dissent.