348 P.2d 88

SOCORRO ELECTRIC COOPERATIVE, INC., a corporation, Petitioner-Appellant,

v.

PUBLIC SERVICE COMPANY of New Mexico, a corporation, and the New Mexico Public Service Commission, Respondents-Appellees.

No. 6574.

Supreme Court of New Mexico.

Dec. 21, 1959.

John E. Hall, Albuquerque, for appellant.

W. A. Keleher, John B. Tittmann, Albuquerque, for Public Service Co. of N. Mex.

.Hilton A. Dickson, Jr., Atty. Gen., Frederick G. Vonhuben, Sp. Asst. Atty. Gen., for New Mexico Public Service Commission.

LUJAN, Chief Justice.

The Public Service Company of New Mexico filed a petition with the New Mexico Public Service Commission seeking an order authorizing the construction of a 115 KV transmission line from Person Generating Station near Albuquerque to a proposed Permanente Cement Company site near Scholle in Socorro County, or authorizing the transmission of power to the proposed site over lines operated by the Bureau of Reclamation.

Appellant, Socorro Electric Cooperative, Inc., filed a petition for leave to intervene in the Commission proceeding since it wished to protest the application. The Cooperative is a rural electric cooperative organized in 1945 under Chapter 47, New Mexico Session Laws of 1939, which engages in the business of distributing electricity to its member consumers and certain others in the Counties of Socorro, Catron, Valencia and McKinley. It provides electric service to its customers in the general area of the proposed Permanente plant site and was ready, willing and able to serve Permanente at a price competitive with that quoted by the Public Service Company.

The Commission allowed the Cooperative to intervene only for the purpose of offering any evidence which might have some bearing on whether or not the public convenience and necessity required the service proposed by the Public Service Company. The Commission ruled that it had no jurisdiction over the Cooperative and that it could not grant it any affirmative relief.

After the hearing, and after submission of written briefs by all parties involved, the Commission issued an order granting the Public Service Company authority to construct, install, own, operate and maintain such electric public utility plant and facilities as might be required or convenient to provide electric public utility service to the proposed plant site.

The Cooperative appealed the Commission decision to the District Court of Socorro County, and the court, having considered the matter on the record made before the Commission, affirmed the order of the Commission and concluded that the Public Service Commission has no jurisdiction over Socorro Electric Cooperative and cannot grant any affirmative relief to it.

The Cooperative relies on four points for reversal. However, unless it can prevail on its first contention, the action of the district court must be affirmed. This contention is as follows:

"The Court erred in holding that the Socorro Electric Cooperative, Inc., was not a public utility within the meaning

of the New Mexico Public Utility Act, particularly as to Section 46 thereof."

Section 46 of the New Mexico Public Utility Act (§ 68–7–1, N.M.S.A., 1953 Comp.), which concerns, among other things, the jurisdiction of the Commission to hear complaints about territorial interference or encroachment by one public utility against another, provides in pertinent part as follows:

"* * * but, if any public utility in constructing or extending its line, plant, or system unreasonably interferes or is about unreasonably to interfere with the service or system of *any other public utility*, the commission on complaint of the public utility claiming to be injuriously affected, may, after hearing, on reasonable notice, make such order and prescribe such terms and conditions in harmony with this act as are just and reasonable." (Emphasis added.)

Thus we see that the determinative issue to be resolved is whether the Cooperative is a public utility within the meaning of the Public Utility Act.

The preamble and definitions contained in the Act are of considerable help in resolving this issue. The preamble reads as follows:

"(A) Public utilities as hereinafter defined are affected with the public interest in that, among other things,

"(1) A substantial portion of their business and activities involves the rendition of essential public services to large numbers of the *general public*. (Emphasis added.)

"(2) Their financing involves the investment of large sums of money, including capital obtained from many members of the general public.

"(3) The development and extension of their business directly affects the development, growth, and expansion of the general welfare, business and industry of this state.

"(B) It is the declared policy of this state that the public interest, the interest of consumers, and the interest of investors require the regulation and supervision of such public utilities to the end that reasonable and proper services shall be available at fair, just, and reasonable rates, and to the end that capital and investment may be encouraged and attracted so as to provide for the construction, development and extension of proper plants and facilities *for the rendition of service to the general public* and to industry." (Emphasis added.)

Section 1(f) (§ 68–3–2(f)) defines a public utility as follows:

"The term 'public utility' or 'utility' when used in this act shall mean and include every person not engaged sole-

ly in interstate business and except as hereinafter stated, that now does or hereafter may own, operate, lease, or control: (1) Any plant, property, or facility for the generation, transmission, or distribution, sale or furnishing *to or for the public* of electricity for light, heat, or power, or other uses \* \* \*." (Emphasis added.)

It is also important to note that Section 68–3–3, N.M.S.A., 1953 Comp., expressly exempts Cooperatives organized under the Rural Electric Cooperative Act (Chapter 47, Laws of 1939) from regulation by the Public Service Commission.

▮ After considering the statutory definition of a public utility as set forth above, in conjunction with the fact that cooperatives are not subject to regulation by the Public Service Commission, the conclusion that a rural electric cooperative is not a public utility within the meaning of the Public Utility Act seems inescapable.

▮▮ The rights and obligations of a rural electric cooperative differ basically from those of a public utility. In this connection 73 C.J.S. Public Utilities § 2, p. 992 states as follows:

"The test is, therefore, whether or not such person holds himself out, expressly or impliedly, as engaged in the business of supplying his product or

service to the public, as a class, or to any limited portion of it, as contradistinguished from holding himself out as serving or ready to serve only particular individuals.

"The public or private character of the enterprise does not depend, however, on the number of persons by whom it is used, *but on whether or not it is open to the use and service of all members of the public who may require it,* to the extent of its capacity; and the fact that only a limited number of persons may have occasion to use it does not make it a private undertaking *if the public generally has a right to such use.* \* \* \*" (Emphasis added.)

Similarly, 43 Am.Jur. 571, Public Utilities and Services, defines a public utility as follows:

"As its name indicates, the term 'public utility' implies a public use and service to the public; and indeed, *the principal determinative characteristic of a public utility is that of service to or readiness to serve, an indefinite public (or portion of the public as such) which has a legal right to demand and receive its services or commodities."* (Emphasis added.)

The Socorro Electric Cooperative, Inc., cannot meet the requirement that it be ready to serve the public generally. Its

statutory power to serve is strictly limited. Under Section 45–4–3, N.M.S.A., 1953 Comp., it can supply electric energy to its members, to governmental agencies and political subdivisions, and to other persons *not in excess of ten percent. of the number of its members.*

In San Miguel Power Association v. Public Service Commission, 4 Utah 2d 252, 292 P.2d 511, the Public Service Commission granted a certificate of convenience and necessity to Utah Power and Light Company to extend its electric power lines into an area where rural electric cooperatives were operating. The cooperatives brought certiorari to review the Commission's order. In the action before the Commission, the cooperatives had filed a complaint and protest, alleging that the extension would be an unreasonable interference with their system and service.

The defendant moved to strike the complaint and protest on the ground that the cooperatives, not being public utilities within the meaning of the utility act, had no standing to protest and the Commission had no jurisdiction to entertain their protest. The Commission so ruled and refused to allow the cooperatives to intervene.

The Utah statute governing certificates of convenience and necessity for new construction is very similar to ours. In affirming the action of the Commission, the court stated as follows: 4 Utah 2d at page 254, 292 P.2d at page 512.

"* * * Since plaintiffs cannot legally be required to serve the public generally, they are not public utilities and the Commission correctly so decided."

The court relied upon the prior Utah decision in Garkane Power Company, Inc. v. Public Service Commission, 98 Utah 466, 100 P.2d 571, 132 A.L.R. 1490. In that case the cooperative applied to the Commission for an exemption from obtaining a certificate or in the alternative for a certificate of convenience and necessity. The Commission refused the exemption and assumed jurisdiction over the cooperative. The Supreme Court reversed the Commission action on the ground that a membership cooperative was not a public utility within the meaning of the statute.

"The essential feature of a public use is that it is not confined to privileged individuals, but is open to the indefinite public. It is this indefiniteness or unrestricted quality that gives it its public character." Thayer v. California Development Board, 164 Cal. 117, 128 P. 21, 25.

There is one minor distinction between the Garkane case and the situation before this court. The New Mexico statute under which the Socorro Electric Cooperative was organized restricts its service to its

membership, governmental agencies and political subdivisions and to other persons not exceeding ten percent of the number of its members. The Utah statute provided that the cooperative service its members only. But in either case there is a distinct limitation which forbids service to the public generally.

In Clearwater Power Company v. Washington Water Power Co., 78 Idaho 150, 299 P.2d 484, 485, Clearwater and other cooperatives filed a complaint with the Public Utilities Commission seeking an order of the Commission requiring the Washington Water Power Company to cease and desist from encroaching on the territories claimed to be served by the cooperatives. The Commission dismissed the complaint for want of jurisdiction and the Supreme Court upheld this order of dismissal, stating as follows:

"The power thus given to the commission to prevent interference by extensions of a public utility into territory already served, is limited to territory already served by 'another public utility', and the complaint which the commission is authorized to hear is the 'complaint of the public utility claiming to be injuriously affected.' * * * *The Commission is given no authority* * * * *to hear the complaint of cooperatives."* (Emphasis added.)

The Socorro Electric Cooperative fails to meet the test of a public utility in that it does not profess to, and indeed cannot, serve the public generally, and equally important, it cannot be compelled to serve the public or a specific individual who requests such service.

The judgment of the trial court is affirmed.

It is so ordered.

McGHEE, COMPTON and CARMODY, JJ., concur.

MOISE, J., not participating.