205 So.2d 389

**CENTRAL LOUISIANA ELECTRIC COMPANY, Inc.**

v.

**LOUISIANA PUBLIC SERVICE COMMISSION et al.**

No. 48731.

Dec. 11, 1967.

Dissenting Opinion Dec. 21, 1967.

Rehearing Denied Jan. 15, 1968.

Landry, Watkins, Cousin & Bonin, Jacob S. Landry, William O. Bonin, New Iberia, for plaintiff and appellant.

Theus, Grisham, Davis, Leigh & Brown, Thomas W. Leigh, Monroe, Monroe & Lemann, Melvin I. Schwartzman, Andrew P. Carter, Eugene G. Taggart, Chas. King Mallory, New Orleans, for Louisiana Power & Light Co., amicus curiae.

Taylor, Porter, Brooks, Fuller & Phillips, F. W. Middleton, Jr., Tom F. Phillips, Baton Rouge, for Gulf States Utilities Co., amicus curiae.

Wilkinson, Woods, Carmody, Meadows & Hall, Arthur R. Carmody, Jr., Shreveport, Wallace, Wyche & Bigby, Walter O. Bigby, Bossier City, for Southwestern Electric Power Co., amicus curiae.

Paul M. Hebert, Theo. F. Cangelosi, John Schwab, Robert L. Cangelosi, Baton Rouge, J. Norwell Harper, Jones, Kimball, Harper, Tête & Wetherill, Lake Charles, for intervenor-appellee.

Joseph H. Kavanaugh, Baton Rouge, for defendant-appellee.

HAMITER, Justice.

The instant litigation commenced when the Central Louisiana Electric Company, Inc. (Central), an investor-owned electric public utility, filed a complaint before the Louisiana Public Service Commission (Commission) charging that the Beauregard Electric Cooperative, Inc. (Beaure-

gard) had violated the provisions of LRS 45:123 by affording service to the Wood Preserving Division of International Paper Company (allegedly a customer of Central), without first obtaining a certificate of public convenience and necessity from the Commission. Beauregard is a nonprofit cooperative which was organized, and now exists, pursuant to the provisions of LRS 12:301–329 (originally Act 266 of 1940).

Beauregard excepted to the jurisdiction of the Commission, urging that LRS 45:123 is inapplicable since it (Beauregard) is not an "electric public utility" within the contemplation of that statute; and also because LRS 12:326 particularly exempts cooperatives transacting business in this state "in *all* respects from the *jurisdiction* and *control* of the Public Service Commission of this state." However, the Commission entertained jurisdiction of the matter. And, following a hearing on the merits, it dismissed Central's complaint, holding that Beauregard had not violated LRS 45:123. (Italics ours.)

Thereupon, Central appealed to, or brought this suit in, the district court of East Baton Rouge Parish. Beauregard intervened, reurging its exception to the Commission's jurisdiction.

The district court, relying on our decision in Louisiana Power and Light Company v. Louisiana Public Service Commission et al., 250 La. 596, 197 So.2d 638, maintained the exception to the Commission's jurisdiction

and dismissed the suit. (That court also considered the merits of the cause and approved the factual conclusion of the Commission that Beauregard had not violated the provisions of LRS 45:123. However, because of our holding on the jurisdictional issue announced hereinafter, we shall not pass upon the cause's merits.)

On this appeal by Central from the district court's judgment it asks that we reconsider and overrule our decision in the Louisiana Power and Light Company case, supra, wherein we held (among other things) that the provisions of LRS 45:123, which require an electric public utility to obtain a certificate of public convenience and necessity from the Commission before serving customers already receiving service from another electric public utility, do not apply to electric cooperatives. But our further consideration of that case convinces us that the decision therein was correct and is amply supported by the reasons set out in the opinion. In fact, those reasons are well articulated and documented; and we reaffirm them.

Central also urges here that, even without consideration of the provisions of LRS 45:123, the plenary authority over *all* "public utilities", and "electric public utilities" in particular, granted to the Commission by the first paragraph of Article VI, Section 4 of the Louisiana Constitution of 1921, gives that body jurisdiction over electric cooperatives; and that, therefore, the Commission

has authority to adjudicate customer disputes such as the one involved in the instant case. Cited and relied on are City of Monroe v. Louisiana Public Service Commission, 233 La. 478, 97 So.2d 56 and Greater Livingston Water Company v. Louisiana Public Service Commission, 246 La. 273, 164 So.2d 325 (these we shall discuss hereinafter).

Article VI, Section 4 of the Constitution pertinently provides: "The Commission shall have and exercise all necessary power and authority to supervise, govern, regulate and control all common carrier railroads, street railroads, interurban railroads, steamboats and other water craft, sleeping car, express, telephone, telegraph, gas, electric light, heat and power, water works, common carrier pipe lines, canals, (except irrigation canals) *and other public utilities* in the State of Louisiana, and to fix reasonable and just single and joint line rates, fares, tolls or charges for the commodities furnished, or services rendered by such common carriers or public utilities, except as herein otherwise provided.

"The power, authority, and duties of the Commission shall affect and include all matters and things connected with, concerning, and growing out of the service to be given or rendered by the common carriers and public utilities hereby, *or which may hereafter be made subject to supervision, regulation and control by the Commission, The right of the Legislature to place other public utilities under the control of and confer other powers upon the Louisiana Public Service Commission respecting common carriers and public utilities is hereby declared to be unlimited by any provision of this Constitution.*" (Italics ours.)

We do not agree with the contention of Central that the phrase "other public utilities" in the first paragraph of the above quoted section has the effect of placing *all* public utilities, of whatever nature and character, under the jurisdiction of the Commission. Such an interpretation would render that phrase (in the first paragraph) in direct conflict with, and make nugatory, the above underscored provisions of the second paragraph which give to the *Legislature* the *"unlimited" right* to place "other public utilities" under the control of, and confer other powers respecting such utilities upon, the Commission. It likewise would render meaningless that portion of the second paragraph which sets out the power and authority of the Commission over public utilities "which may hereafter be made subject to supervision, regulation and control by the Commission."

Moreover, that interpretation would have the same effect with regard to the provisions of Sections 5 and 6 of Article VI. The former section provides for the effective date of rate making orders of the Commission with respect to public utilities *"named herein, or hereafter placed under the control of said Commission."* The latter

section sets forth the penalty for violation of the Commission's rate fixing orders by any "public utility *now, or which may hereafter be placed, under the control of the Commission."* (Italics ours.)

■ All of the mentioned constitutional provisions when read together clearly show an intention to limit the Commission's constitutional powers to the public utilities specifically named therein *and to accord to the Legislature the right to determine which other such utilities should be placed under the authority of the Commission as future circumstances dictate.* To hold otherwise would do violence to the cardinal rule of constitutional and statutory construction that such enactments should be construed, where possible, so as to give force and effect to each provision and to render none nugatory. Decklar v. Frankenberger, 30 La.Ann. 410; Meyers v. Flournoy, 209 La. 812, 25 So.2d 601; 66 American Jurisprudence 2d 242, verbo "Constitutional Law, Sections 66–67; and 16 C.J.S. verbo Constitutional Law §§ 22–23, p. 91. (Italics ours.)

We think that this court in Talbot v. Louisiana Highway Commission et al., 159 La. 909, 106 So. 377 (and its companion case, Louisiana Public Service Commission v. Louisiana Highway Commission et al., 159 La. 932, 106 So. 385) correctly interpreted the meaning of "other utilities" as used in the first paragraph of the above quoted constitutional provisions when the identical argument made herein was unsuc-

cessfully urged. There it was contended that a toll bridge was a public utility; that its building and operation fell under the jurisdiction of the Public Service Commission by virtue of the "other utilities" provision in the first paragraph of Article VI, Section 4; and that, consequently, the Public Service Commission alone was authorized to grant the franchise to build the bridge and to fix the tolls to be charged for its use. In rejecting that contention we said: "The provisions of the Constitution defining the functions and authority of the public service commission, sections 4 to 7, inclusive, of article 6, do not, in terms, *give the commission authority to supervise, regulate or control any and every concern serving a public want and called a public utility.* It is true that section 4, after declaring that the commission shall have authority to supervise, govern, regulate and control all common carrier railroads, street railroads, interurban railroads, steamboats and other water craft, sleeping car, express, telephone, gas, electric light, heat and power, waterworks, common carrier pipe lines and canals (except irrigation canals), says: *'and other public utilities in the state of Louisiana.'* *But the language quoted means such other public utilities as the Legislature may place under the control of the public service commission, and such local public utilities as the electors of any city, town or parish may, a majority vote, surrender to the control of the public service commission.* That interpretation is expressed in the second para-

graph of section 4, and in Sections 5, 6 and 7 of the same article. * * *

" * * *

"The idea was that there might be other public utilities—other than those specified in section 4—that would not come under the control of the public service commission, *without an act of the Legislature making it so.* It was so said in Standard Oil Co. of Louisiana v. Louisiana Public Service Commission, 154 La. 557, 97 So. 859." (Italics ours.)

Very shortly after our decision in that case the Legislature, by Act 224 of 1926, placed toll bridges (as public utilities) under the authority of the Public Service Commission; but it provided that *the act should not apply until such bridge was completed and placed in actual operation.* Whereupon, the Commission issued orders dealing with the building of the proposed bridge and with rate fixing therefor. And in a suit by the New Orleans Pontchartrain Bridge Company against the Commission to enjoin such action the latter contended that, once the utility had been placed under the authority of the Commission, its jurisdiction vested immediately by virtue of the constitutional provisions (Article VI, Section 4) and that the Legislature was without authority to delay its taking action. This court answered the argument as follows: "The answer is to be found in the last clause of the paragraph and section referred to, and it is this: The right of the Legislature to place other public utilities than those specially enumerated under the control of the Public Service Commission and to confer on that commission other powers is unlimited by any other provisions of the Constitution.

"If, therefore, the Legislature has the power to declare toll bridges public utilities and to place them under the control of the Public Service Commission, and this power is unlimited, which is conceded, then it logically follows that the Legislature has the power and discretion to declare when such bridges are to become public utilities and to fix the time at which such bridges shall be subject to the control of the Public Service Commission." New Orleans Pontchartrain Bridge Company v. Louisiana Public Service Commission et al., 162 La. 874, 111 So. 265.

The correctness of our above expressed construction of Article VI, Section 4, we think, is further fortified by the decision in Louisiana Power and Light Company v. Louisiana Public Service Commission, supra. Therein the primary issue was whether the Commission had jurisdiction to enforce the provisions of LRS 45:123 against an investor-owned electric public utility at the instance, and for the benefit of, an electric cooperative. In holding that we would not permit the exercise of such authority against an admittedly and constitutionally regulated electric utility for the benefit of an electric cooperative we said: "Nor can

the Commission's order be sustained on the theory that, since Section 4 of Article 6 of the Constitution vests plenary power over all public utilities in the Commission, its action in this case is well within its regulatory jurisdiction. * ·* * For our part, we are not disposed to conclude that the Commission is entitled to exercise the constitutional power vested in it over electric public utilities by settling customer disputes with unregulated electric cooperatives when it may not regulate the rates the latter may charge for similar service and when, were the situation reversed, it would be powerless to order the cooperative to comply. * *" Implicit in that language is the conclusion that the constitution does not grant plenary authority over *all* public utilities. Because if it does the Commission would not be "powerless to order the cooperative to comply" in the reverse situation (that which exists here).

: Nor do we think that the cases cited by Central support its contention that only those public utilities specifically exempt by the constitution from Commission regulation are not under its jurisdiction.

City of Monroe v. Louisiana Public Service Commission, supra (the first cited case), involved a rate fixing matter in which there was no question but that the gas corporation concerned was admittedly a regulated public utility. The only issue was between the City of Monroe and the Public Service Commission as to which of these bodies was

the proper regulatory authority. The court merely held that inasmuch as the city had the right to fix such rates within its limits (when the Commission was given constitutional status and authority) the utility fell within the provisions of Article VI, Section 7 of the Constitution which reserved to municipalities so situated the right to continue to fix rates.

Greater Livingston Water Company v. Louisiana Public Service Commission, supra (the second cited case), did not deal with a consideration of what was meant by "other public utilities" in the first paragraph of Article VI, Section 4. The contention made by the water company there, in attempting to avoid rate fixing by the Commission, was that it was "an instrumentality of a political subdivision of the state"—that is, it was owned by the Parish of Livingston, which parish was authorized to fix its rates—and that, therefore, it was exempt by the provisions of Article VI, Section 7. The court found that the company was not owned by the parish (it was privately owned), and held that the parish did not have authority to fix its rates. Therefore, it was not exempt from the operation of Article VI, Section 4 by Section 7 thereof.

The court, incidentally, in the Greater Livingston Water Company case, supra, did not conclude that because the company involved was a water utility (and a sort of public utility) that it necessarily fell within the jurisdiction of the Commission. It con-

sidered the nature and character of the corporation before concluding that it was within the *intendment* of Article VI, Section 4. In this connection the court said: "Whatever else the framers of the constitution may have intended, we do not hesitate to conclude that they did not intend that a utility such as that under consideration could be free from the control of either the town, city or parish governments or the Public Service Commission, and hence subject to no control whatsoever. * * *"

In showing that the corporation did fall within the provisions of the constitution the court noted the following characteristics of the company which clearly are not applicable to cooperatives: "Where a monopoly exists, the regulation by the Public Service Commission, as a state agency, of private utility corporations operated for profit has been considered necessary, as it is, for the protection of their customers. * * *

"For a utility's customers to be devoid of the protection afforded by the regulatory power of the Public Service Commission and to have no recourse through the ballot against the member-directors who are imposing the rates they must pay, would give them no protection against arbitrary and unreasonable exploitation; there would be no assurance of adequate service at reasonable rates. In this case the company has an exclusive franchise; the member-directors of the company are not elected by the people; they cannot be removed from office by

the people, or the parish police jury; they appoint their own successors and are, therefore, immune from any control by the people. Therefore, if they are permitted to avoid regulation by the Commission, their rate-making power would be without any restraint. This is not permitted by Article VI of the Constitution." By its observations the court thus left the door open for future consideration of whether other water utilities of a different character might or might not fall within the contemplation of Article VI, Section 4.

Furthermore, we have concluded that an electric cooperative is not an "electric public utility" within the intendment of the constitutional provision relied on by Central. Electric cooperatives, as we pointed out in Louisiana Power and Light Company v. Louisiana Public Service Commission, supra, were not in existence in this state as such in 1921 (when our Constitution was adopted). We doubt that organizations of the character of cooperatives were even in contemplation then. Too, as indicated by our observations in Greater Livingston Water Company v. Louisiana Public Service Commission, supra, the constitutional provision when enacted was concerned principally with protection of the customers as against the utility (rather than to regulate as between utilities). Such protection is not necessary in a cooperative operation.

Also persuasive as to the correctness of our conclusion that electric cooperatives are

not "electric public utilities" within the intendment of Article VI, Section 4, is the fact that the Legislature has seen fit to particularly exempt them from such control, and for a long period of time the Commission never attempted to exercise any authority with respect thereto. It was only recently that the Commission entertained any jurisdiction over the cooperatives (then only in customer disputes between them and investor-owned utilities), and this apparently as the result of recent Court of Appeal decisions which were rendered ineffective by Louisiana Power and Light Company v. Louisiana Public Service Commission, supra. (See Pointe Coupee Electric Membership Corporation v. Central Louisiana Electric Company, Inc., et al., La.App., 140 So. 2d 683; South Louisiana Electric Cooperative Association v. Central Louisiana Electric Company, Inc., et al., La.App., 140 So. 2d 687; and South Louisiana Electric Cooperative Association v. Louisiana Power and Light Company, La.App., 161 So.2d 413.)

Therefore, our conclusion is that electric cooperatives, assuming arguendo that they are "public utilities" of some sort and as such might be placed by the Legislature either partially or wholly under the authority of the Commission, are not "electric public utilities" or "other utilities" envisioned by the language and within the intendment of Article VI, Section 4 of the Louisiana Constitution; and that, inasmuch as the Legislature has not exercised its pre-

rogative to give the Commission control of them, the latter is without jurisdiction over their operations.

The briefs of Central and of amicus curiae (filed in behalf of Central's position) contain cogent arguments and compelling reasons why (assuming that the facts recited in those briefs are correct—they do not all appear in the record) the time has come, in the interest of orderly distribution of electric service throughout the state and to prevent economic waste in the industry, for the electric cooperatives to be regulated, at least in some respects, by the Public Service Commission. However worthy such arguments and reasons might be, they obviously address themselves to the Legislature, the policy-making body of the state, and not to the courts.

For the reasons assigned the judgment of the district court, maintaining the exception to the jurisdiction of the Public Service Commission and dismissing this suit, is affirmed. Central is cast for all costs.

SUMMERS, Justice (dissenting).

The majority opinion finds that the Public Service Commission has no jurisdiction to hear this customer dispute involving an electric cooperative. It holds that the provisions of La.R.S. 45:123, which require an electric public utility to obtain a certificate of public convenience and necessity from the Commission before serving customers

already receiving service from another electric public utility, do not apply to electric cooperatives because electric cooperatives cannot be regarded as electric public utilities.

The opinion refers to this court's decision in Louisiana Power & Light Company v. Louisiana Public Service Commission, 250 La. 596, 197 So.2d 638 (1967) and approves the reasons therein assigned as its own. The reasons assigned in the cited case for holding that electric cooperatives are not public utilities are—"(1) because these cooperatives, operating under the Rural Electrification Act (7 U.S.C.A. Sec. 901 et seq.) were not in existence as such in 1936, and, hence, were not intended to be public utilities as defined by Act 254 of 1936; (2) because Act 266 of 1940 (now R.S. 12:301–12:330), under which the electric cooperatives are created specifically excepts, in R. S. 12:326, cooperatives transacting business in the State from the jurisdiction and control of the Public Service Commission and (3) because Sections 1 and 2 of Act 254 of 1936 (R.S. 45:122 and 45:123) make it clear that the Legislature was referring only to public utilities regulated by the Public Service Commission in its definition set forth in R.S. 45:121."

I did not subscribe to the quoted language of the decision, since I was of the opinion that the issue of whether or not the cooperative was an electric public utility was not the issue to be decided by that case, and,

moreover, it was my opinion that there were insufficient facts in the record upon which a proper decision could be based. Reasons were assigned for my dissent.

I find the same situation exists in the case at bar. No evidence has been introduced upon the issue of whether or not the Cooperative is a public utility, the trial court judge simply stating that he felt the Public Service Commission had no jurisdiction over the Cooperative because this case was governed by our decision in Louisiana Power and Light Company v. Louisiana Public Service Commission, supra. In fine, there is inadequate evidence in the record of either case which would support a finding that the cooperatives involved are, or are not, public utilities. The majority, however, seems determined to adjudicate this issue and the error of the results it reaches must be pointed out on the record which does exist. The issue must be resolved in large measure from the law.

In 1921 Article VI, Section 4 of the Constitution was enacted providing that, "The Commission shall have and exercise all necessary power and authority to supervise, govern, regulate and control all * * * electric light, heat and power * * * and other public utilities in the State of Louisiana and to fix reasonable and just single and joint line rates, fares, tolls or charges for the commodities furnished, or services rendered by such common carriers or public utilities."

Subsequently in 1936, the Legislature enacted Act 254, now incorporated in the Revised Statutes under Title 45 "Public Utilities and Carriers", Chapter 3 thereof entitled "Electricity", the pertinent parts of which are as follows:

"Electric public utility defined.

"The term 'electric public utility' as used in this Chapter means any person furnishing electric service, within this state, the parish of Orleans excepted." La.R.S. 45:121.

"Serving customers of another public utility; certificate required; grounds

"In order to encourage a further development of coordinated statewide electrification based upon a planned economy, an electric public utility shall not render or extend its electric services or facilities to customers already receiving electric service from another electric public utility without first obtaining a certificate of public convenience and necessity from the Louisiana Public Service Commission. The Commission shall grant such a certificate only in the event that the electric service already being rendered is inadequate, or that the rates for such electric service are unreasonable." La.R.S. 45:-123.

The record in this case discloses the Cooperative was serving 12,000 customers, not all of whom were members of the Cooperative. The Commission found, moreover, that membership in the Cooperative was irrelevant, "since membership in the cooperative could scarcely be termed exclusive."

It would appear that Section 4 of Article VI of the Constitution and Title 45, Section 121, of the Revised Statutes, which I have quoted, in the absence of other factual findings bearing upon the issue or other positive law, would make the position of the Cooperative in this litigation entirely untenable. That is to say, the quoted constitutional and legislative pronouncements would appear too plain and unequivocal to merit any argument on the question of whether the Cooperative at bar is a public utility and whether, as such, it is subject to regulation.

However, a subsequent enactment by the Legislature, Act 266 of 1940 (La.R.S. 12:326), is relied upon to alter what are otherwise clear constitutional and legislative expressions. That act provides:

"Cooperatives transacting business in this state pursuant to this Part (the legislation providing for the organization and powers of electric cooperatives) shall be exempt in all respects from the jurisdiction and control of the Public Service Commission of this state." (Parentheses added.)

This latter enactment, however, is without any effect for it is, in plain terms, contrary to the Constitution which provides that "The Commission shall have and exercise all necessary power and authority to su-

pervise, govern, regulate and control * * electric light, heat and power * * * and other public utilities * * *." La. Const. art. 6 § 4 (1921). This constitutional provision is mandatory; its terms are plain and unambiguous; it is the paramount law of the state and it cannot be modified, superseded or amended by a legislative enactment.

On the contrary, instead of altering the meaning of the Constitution, if La.R.S. 12:326 providing that Cooperatives are exempt from Commission regulation is to have any effect in this litigation, it must be considered as a recognition by the Legislature in 1940 that electric cooperatives came within the ambit of the Commission's jurisdiction under Section 4 of Article VI of the Constitution of 1921, quoted above, otherwise it would not have been necessary to attempt to free them from Commission regulation. The attempt, however, must be considered futile for the obviously fundamental reason that a legislative enactment cannot supersede the constitution.

In this connection, it may be noted that the majority in Louisiana Power and Light Company v. Louisiana Public Service Commission, 250 La. 596, 197 So.2d 638 (1967)— the opinion relied upon in the case at bar to support the conclusion that the Cooperative is not a public utility—sets forth that, since electric cooperatives operating under the Rural Electrification Act (7 U.S.C.A.Sec. 901 et seq.) were not in existence as such in 1936, cooperatives were not intended to be included within the definition of public utilities as defined by Act 254 of 1936 (now La. R.S. 45:121 which declares the term "electric public utility" means "any person" furnishing electric service). This conclusion is arrived at by the majority upon the theory that for the language of La.R.S. 45:123 to be applicable, "it is essential that the electric services or facilities extended by an electric public utility be given to customers already receiving electric service from another electric public utility." The error of this conclusion is apparent. Under the reasoning of the majority, unless a public utility was in existence at the time of the statute's enactment (1936) it could not be regulated under the provisions of La.R.S. 45:123. No such interpretation is warranted from the language of the statute and the Constitution (Article VI, Section 4) ordains no such restriction upon the regulatory powers of the Commission.

In broad terms the Constitution confers on the Commission jurisdiction over electric public utilities without regard to the manner in which the utility is organized. For instance, the electric public utility may be a business corporation, a partnership, an individual business, an association or a cooperative similar to the cooperative involved in the instant case, and the electric public utility nevertheless comes within the jurisdiction granted to the Commission by the Constitution. It is not the organizational struc-

ture of a business which makes it a public utility, and the Constitution makes no effort to confine the provisions of Section 4 of Article VI to any particular type of business conducting an electric public utility. Rather, its terms are broad and all inclusive in that respect. The Constitution is concerned with the commodity or service dealt with, and those which the drafters determined were charged with a public interest they called public utilities. In addition, however, the Legislature defined an electric public utility as "any person furnishing electric service," thereby adding emphasis to what was already abundantly clear. See La.R.S. 45:121.

The only authority cited by the majority to sustain its position in Louisiana Power & Light Company v. Louisiana Public Service Commission, 250 La. 596, 197 So.2d 638 (1967) are the cases of Black River Electric Co-op., Inc. v. Public Service Com'n, 238 S. C. 282, 120 S.E.2d 6 (1961); Clearwater Power Company v. Washington Water Power Co., 78 Idaho 150, 299 P.2d 484 (1956); Socorro Electric Cooperative, Inc. v. Public Service Commission, 66 N.M. 343, 348 P.2d 88 (1959) and San Miguel Power Ass'n. v. Public Service Company, 4 Utah 2d 252, 292 P.2d 511 (1956).

In the Black River Electric Cooperative Case the court was concerned with the jurisdiction of the Public Service Commission in South Carolina over a customer dispute between a cooperative electric utility and an investor owned electric utility. The Legislature in South Carolina had enacted a statute providing that electric cooperatives should be exempt from regulation by the Commission—just as the Legislature has in Louisiana. But the significant and all important distinction between the Black River Case and the case at bar is that South Carolina had no constitutional provision making regulation of electric public utilities mandatory and its legislative enactment exempting cooperatives from Commission regulation could stand; whereas, in Louisiana the act exempting electric cooperatives from Commission regulation cannot stand because it is contrary to Article VI, Section 4, of the Constitution requiring the regulation of electric public utilities and to La.R.S. 45:121 clearly defining electric public utilities to be "any person" furnishing electric service.

The other cases relied upon by the majority are to the same effect as the Black River Case and were cited in the Black River Case to sustain its holding. All of those cases turned upon legislative enactments which exempted cooperatives from regulation by the Commission—none involved a conflict between constitutional and legislative enactments which is the case at bar.

Many jurisdictions hold that as a matter of fact cooperatives are public utilities. It is the prevailing view supported both by the realities of the proposition and a common sense of justice. I cited these cases in my previous dissent on this issue, and I refer to

them again for emphasis. See 197 So.2d 647.

The Cooperative at bar, furthermore, has the usual attributes of a public utility. It serves a significant segment of the public—12,000 users. Membership, according to the finding of the Commission, is "scarcely exclusive" and the inference follows that the cooperative serves both members and non-members. The law has given it the power of eminent domain and it is eligible to receive franchises which permit it to place its lines in public rights of way. These are all factors, in addition to the constitutional and legislative definitions, which establish the public utility nature of this electric cooperative factually and legally.

Upon the basis of the Constitution, La.R. S. 45:121 and the scanty evidence in this record, it is evident both from the legal and factual point of view that the cooperative in this case is an electric public utility. It is likewise evident that the majority opinion is contrary to the express mandate of the Constitution requiring the regulation of electric public utilities by the Commission.

The result the majority reaches must inevitably bring about competitive chaos in the industry, destroying investments and raising the cost of electricity to the consumer, a result the Constitution seeks to avoid.

On the merits, I would sustain the first order of the Commission which found that the Cooperative was "taking" the customers of Central Louisiana Electric Company, Inc., contrary to La.R.S. 45:123.

I respectfully dissent.

SUMMERS, J. dissents from the refusal of a rehearing.