230 So.2d 273 (1969)
GULF STATES UTILITIES COMPANY, Plaintiff-Appellant,
v.
JEFFERSON DAVIS ELECTRIC COOPERATIVE, INC., Defendant-Appellee.
No. 2905.
Court of Appeal of Louisiana, Third Circuit.
December 4, 1969.
Dissenting Opinion December 11, 1969.
Rehearing Denied December 18, 1969.
Writ Granted February 6, 1970.
Stockwell, St. Dizier, Sievert & Viccellio, by Oliver P. Stockwell and Robert Thomas, Lake Charles, for plaintiff-appellant.
John Schwab, Baton Rouge, Adams & Peters, by Walter C. Peters, Jennings, for defendant-appellee.
*274 Before TATE, FRUGÉ and HOOD, JJ.
TATE, Judge.
Gulf States Utilities Company seeks to enjoin the Jefferson Davis Parish Electric Cooperative, Inc. from constructing or maintaining certain electrical transmission lines in Jefferson Davis Parish. Gulf States appeals from the dismissal of its suit.
Gulf States's demand for an injunction is based upon contentions (1) that the cooperative should not be permitted to extend its electricity lines to a customer already receiving electric service from Gulf States and (2) that the cooperative's construction of parallel and cross-over lines interferes with Gulf States's prior use and occupancy of utility servitudes in the area served.
The facts of this case are not in dispute. In April of 1967 Jeff Davis Cooperative constructed some 5.8 miles of electrical transmission lines to serve a new well location of Pan American Petroleum Corporation, in the Welsh area. Heretofore, Gulf States had serviced Pan American Petroleum Corporation's wells in that area and had available lines in the immediate vicinity of the new well location. In constructing the new lines Jeff Davis Cooperative paralleled Gulf States's lines for.5 of a mile in one instance, and .7 of a mile in another and crossed Gulf States's lines in two places.
Neither Gulf States nor Jefferson Davis Cooperative has an exclusive franchise to serve the area in question. Both are duly franchised to serve the area by the local police jury.

1.
By its principal contention, Gulf States asserts that Jeff Davis "had no right to take its customer without making a showing that Gulf States Utilities Company could not furnish the service at rates approved by the Louisiana Public Service Commission" (brief, p. 2) and that the courts "should assume the same role that the Public Service Commission would assume under similar circumstances" (brief, p. 8) to prevent Jeff Davis from doing so.
The sole statutory basis for this contention is LSA-R.S. 45:123.[1] The enactment provides that the Public Service Commission shall not grant a certificate to an "electric public utility" to extend its services to customers of another utility, unless the latter's services are inadequate or rates unreasonable.
The Supreme Court of Louisiana has thrice within the last three years rejected arguments similar to those advanced by Gulf States. Construing the cited statute in the context of other pertinent constitutional and statutory provisions, a majority repeatedly held that electric cooperatives are not "electric public utilities" subject to the provisions of the cited statute or to regulation by the public service commission. Central Public Service Commission v. Louisiana Public Service Com'n, 253 La. 553, 218 So.2d 592; Central Louisiana Electric Co. v. Louisiana Public Service Commission, 251 La. 532, 205 So. 2d 389; Louisiana Power & Light Co. v. Louisiana Public Service Commission, 250 La. 596, 197 So.2d 638.
Gulf States contends, however, that the Supreme Court simply held that the public service commission cannot regulate the *275 question of inter-utility competition; that, therefore, the matter is subject to regulation by the courts in the light of the public policy expressed by LSA-R.S. 45:123 that no utility, including cooperatives, should attempt to service customers previously serviced by another.
We will assume arguendo that the statute so expresses a State "public policy," despite the interpretations of the Supreme Court to the contrary. Nevertheless, we are cited to no constitutional or statutory authority by which Louisiana courts may take upon themselves the regulation of competition between utilities and cooperatives or the allocation of territorial monopolies among them, any more than competing grocers or shoe peddlers could be so governed by judicial fiat.
Civil Code Article 1 expresses the fundamental civilian principle here applicable: "Law is a solemn expression of legislative will." (Italics ours.) As the Supreme Court noted in the cited opinions, the questions raised by the appellant address themselves to the legislature, not to the courts.
The trial court properly denied the injunction sought to prevent the cooperative from servicing one of Gulf States's former customers. In the absence of applicable regulation or exclusive franchise, a prior franchise to service a given territory, or prior servicing of it, does not confer any preemptive rights entitling a first utility to enjoin a subsequent one from competing within the area. Suburban Natural Gas Co. v. Waterworks District Number Three, La.App. 3d Cir., 223 So.2d 417, certiorari denied; Sewerage District Number One of Rapides Parish v. Afco Corporation, La.App. 3d Cir., 177 So.2d 308, certiorari denied.

2.
Gulf States further contends that Jeff Davis Cooperative "had no right to construct a line in the road rights of way of Jefferson Davis Parish, which construction and operation interfered with the use and occupancy of the road rights of way by Gulf States Utilities Company as prohibited by R.S. 12:403(11)."[2] (Brief, p. 2).
The trial court properly interpreted the statutory prohibition against constructing lines which "interfere" with those of another utility as contemplating a prohibition only against unreasonable interference. The statutory prohibition thus does not include such inter-utility parallel and cross-over lines reasonably incident to competition, commonly alleviated by inter-utility cooperation and adjustment of the lines so adjacent. Cf., Annotation, Interference by Competitor, 119 A.L.R. 432, 436-439 (1939).
The trial court's excellent analysis of the evidence on the question shows there to be no interference with Gulf States's lines by the cooperative's that the new lines have been and are to be constructed in accordance with the national electric safety codes and practices, and that no present or future difficulties are expected, any more than in the numerous other instances where two utilities operate service lines in the same area.

Decree
For the reasons assigned, we affirm the judgment of the District Court, at the cost of the plaintiff-appellant.
Affirmed.
*276 FRUGÉ, Judge (dissenting).
I am unable to agree with the opinion of my learned brothers, and therefore I respectfully dissent.
The majority is of the opinion that the provisions of La. R.S. 12:121-125 do not apply to Jeff Davis Cooperative by virtue of Central Public Service Commission v. Louisiana Public Service Commission, 253 La. 553, 218 So. So. 592 (1969); Central Louisiana Electric Company v. Louisiana Public Service Commission, 251 La. 532, 205 So.2d 389 (1967), and Louisiana Power and Light Company v. Louisiana Public Service Commission, 250 La. 596, 197 So.2d 638 (1967).
In those cases, despite a cogent and compelling argument by Justice Summers that La.Const. art. 6, § 4 requires that the Public Service Commission regulate all public utilities therein enumerated and this requirement cannot be derogated from by the Legislature, the Supreme Court clearly held that the Public Service Commission has no jurisdiction over electric cooperatives. But that issue is not contested here. The question that now confronts us, which the Supreme Court did not consider in the above cases, is whether or not the general policy of the State of Louisiana intending to prevent waste, duplication, and inefficiency in the supplying of electricity and other services to the general public, is to have any application at all to electric cooperatives.
La.R.S. 45:121 says:
"The term `electric public utility' as used in this Chapter means any person furnishing electric service, within this state, the parish of Orleans excepted."
The comprehensiveness of the definition of "electric public utility" is readily apparent. In addition, electric cooperatives have the qualities and characteristics of a public utility within the ordinary meaning of the term. As Justice Summers said in Central Louisiana Electric Company v. Louisiana Public Service Commission, 251 La. 532, 205 So.2d 389, 398 (1967):
"The Cooperative at bar, furthermore, has the usual attributes of a public utility. It serves a significant segment of the public12,000 users. Membership, according to the finding of the Commission, is `scarcely exclusive' and the inference follows that the cooperative serves both members and non-members. The law has given it the power of eminent domain and it is eligible to receive franchises which permit it to place its lines in public rights of way. These are all factors, in addition to the constitutional and legislative definitions, which establish the public utility nature of this electric cooperative factually and legally."
When La.R.S. 45:121-125 were enacted in 1936, no electrical utilities including electric cooperatives were excluded from regulation by the Public Service Commission. Therefore the Legislature meant to apply the policy expressed therein to all electrical utilities operating in the state.
When La.R.S. 12:426 and La.R.S. 45:1161 (1) were later enacted, exempting electric cooperatives from the jurisdiction of the Public Service Commission, that is all that the Legislature intended to do. The general policy of La.R.S. 45:121-125, intending to prevent waste, duplication, and higher costs was not meant to be repealed. It is a wellsettled rule of statutory interpretation that when two statutes are in seeming conflict, if possible they are construed in such a way as to give meaning to both.
There is further evidence that the Legislature intended electric cooperatives to be subject to some regulation when it enacted La.R.S. 12:403(11) which says a cooperative may:
"Construct, maintain and operate electric transmission and distribution lines * * provided, that such construction and operation shall not interfere with the use and occupancy thereof by other public utilities."
This is indicative of the Legislative intent to require electric cooperatives to *277 function within the same general framework of regulation applied to all electric utilities.
Otherwise, electric cooperatives, with special tax exemptions and substantial loans at low interest rates from the Rural Electrification Administration, could build generating and distribution facilities which would duplicate those already available and adequately serving the public. This would result in waste, duplication, inefficiency and higher cost to the public in addition to forcing investor-owned utilities to compete on a severely unequal basis. Thus, a completely unregulated electric cooperative utility would have a deleterious effect on the economy of the state. It is difficult to believe that the Legislature intended this result. At least the courts of this state, if not the Public Service Commission, can apply the basic policy of the state as reflected in La.R.S. 45:121-125 and La.R.S. 12:403 (11).
La.R.S. 45:123 says in part:
"In order to encourage a further development of coordinated state-wide electrification based upon a planned economy, an electric public utility shall not render or extend its electric services or facilities to customers already receiving electric service from another electric public utility * * * [unless] the electric service already being rendered is inadequate, or that the rates for such electric service are unreasonable."
In the instant case the record is devoid of any showing that the service being rendered by Gulf States Utilities was inadequate or that the rates for such electric service were unreasonable. Therefore, in constructing 5.8 miles of new transmission lines which paralleled existing lines and crossed it in places in order to serve one customer already being adequately served, Jeff Davis Cooperative was in violation of the provisions of La.R.S. 45:121-125.
In addition, the provisions of La.R.S. 12:403(11) requiring that the construction and operation of electric transmission lines by electric cooperatives shall not interfere with other public utilities apply to Jeff Davis Cooperative. (No one denies this.) It is certainly logical to say that since the Jeff Davis Cooperative line is completely unnecessary, any interference at all is unreasonable. It was clearly shown at the trial that the Jeff Davis Cooperative line created safety hazards merely by having two energized lines in close proximity. Also a telephone line is already on the side which Jeff Davis Cooperative built its lines and where they parallel Gulf States' lines (for .5 and .7 miles respectively) three lines are in close proximity. Despite these complications, Gulf States can service locations across the road and comply with the requirements of the National Electric Safety Code. However, in doing so, Gulf States must send out higher level employees (engineers) since engineering aspects are more complex. Also the size of the crew must be enlarged and more equipment and larger poles are required. These added requirements in servicing locations across the road from Gulf States lines are quite a bit more expensive than the simple operation of dropping a service line where electric transmission lines do not parallel each other.
For these reasons the judgment of the trial court should be overruled and judgment should be rendered in favor of appellants.
On Application for Rehearing.
En Banc. Rehearing denied.
MILLER, J., recused.
FRUGÉ, J., votes for a rehearing.
NOTES
[1] LSA-R.S. 45:123 provides: "In order to encourage a further development of coordinated statewide electrification based upon a planned economy, an electric public utility shall not render or extend its electric services or facilities to customers already receiving electric service from another electric public utility without first obtaining a certificate of public convenience and necessity from the Louisiana Public Service Commission. The Commission shall grant such a certificate only in the event that the electric service already being rendered is inadequate, or that the rates for such electric service are unreasonable. (Italics ours.)
[2] LSA-R.S. 12:403(11) (as renumbered in 1968) provides that: "A cooperative may: * * * (11) Construct, maintain and operate electric transmission and distribution lines along, upon, under and across all public thoroughfares, including without limitation, all roads, highways, streets, alleys, bridges and causeways, and upon, under and across all publicly owned lands, subject, however, to the requirements in respect to the use of such thoroughfares and lands that are imposed by law; and, provided, that such construction and operation shall not interfere with the use and occupancy thereof by other public utilities." (Italics ours.) See also LSA-R.S. 12:428.