BLANCHE, Judge.
Dixie Electric Membership Corporation is an electric cooperative organized and existing under the provisions of LSA-R.S. 12:401 et seq., and operates within the Parish of East Baton Rouge under a Police Jury franchise. Gulf States Utilities Company is a public utility company and likewise operates within the parish pursuant to a franchise granted to it by the governing body of said parish. Both are engaged in the transmission and distribution of electric service to their customers within the parish along the public rights of way. Gulf States had installed and maintained its distribution lines along and within the right of way of Sunshine Road, Lavey Lane, Thomas Road, Plank Road, Comite Drive, Foster Road and Mickens Road and was serving its customers along these routes. On March 16, 1968, Dixie Electric began construction of its distribution lines along these same roads which, at most points, parallels the existing lines of Gulf States. On April 15, 1968, Gulf States applied for and obtained from the trial court a preliminary injunction enjoining Dixie Electric from continuing construction along the said roads and energizing or maintaining electric current on any part of said lines. The Court, on the hearing of the preliminary injunction, found Dixie Electric to be in violation of the National Electric Safety Code at various points of construction along the lines as a result of the erection by Dixie of their poles in too close proximity to those of Gulf States. Thereafter, on stipulation of counsel, the Court granted Dixie Electric the right to correct the code violation and construction deficiencies, and the matter then came on for a hearing on a permanent injunction. After the hearing, the Court rendered judgment in favor of Dixie Electric and against Gulf States denying permanent injunctive relief and setting aside the preliminary injunction previously issued. From this judgment Gulf States has perfected this appeal. The trial judge rendered Written Reasons for Judgment which correctly resolved both issues of fact and law, and we affirm.
Gulf States is correct in its assertion that its lines were in place for many years prior to the time that Dixie began its construction and were adequate to serve the requirements of existing as well as prospective customers along said route. However, Dixie Electric claims that Gulf States does not have an exclusive franchise and that under its own franchise it has the right to compete with Gulf States for users of electric service. With this contention, we also agree. The construction by Dixie Electric was sought to be justified by the potential development of the area and to serve three customers along the route as well as a proposed subdivision.
On appeal Gulf States argues that the construction of Dixie Electric’s lines interferes with the use of its pre-existing lines. Commenting on the nature of the interference, the trial judge stated:
“In the instant situation, it cannot be denied that the lines of Dixie which generally parallel those of Gulf States on the opposite side of the roads in question, may cause Gulf States some annoyance and inconvenience, and in some instances additional expense; however, generally, these will be only the normal problems incident to the usual competition between utilities. The evidence offered in the hearing on the permanent injunction clearly reflects that all of the major safety hazards have been eliminated and that whatever hazards or dangers which now exist are only the usual and conventional ones accepted by the industry. The line constructed by Dixie now conforms to what is required in the industry, which has not always been fol *362 lowed by either of the competing companies in the past. Certainly there may be some additional cost involved in cases where Gulf States is attempting to service customers across Dixie’s lines, but in most instances the additional expense will be minimal. * * * ” (Reasons for Judgment, Record, p. 51)
We have reviewed the record and agree with the trial judge in his foregoing findings of fact.
Frederick M. Brooks, a consulting engineer for Dixie Electric, made profiles of both actual and hypothetical constructions along the routes where the lines paralleled to prove that Gulf States could make crossovers under Dixie Electric’s lines to serve customers on the opposite side of the road and maintain the necessary clearances without violating regulatory or safety requirements. This testimony was countered by that of George S. Cannon, the electrical operating superintendent for Gulf States Utilities. In general, he accused Dixie Electric’s proposed crossovers of being unrealistic, especially as concerned the amount of sag which, in his opinion, would create clearance problems as well as unnecessary guying of poles. He also testified as to the additional expense which would be occasioned by the relocation of poles, additional engineering costs and potential hazards that would be encountered as a result of the close proximity of the lines.
Mr. Bernard B. E. B. Snowden, a registered electrical engineer, made an extensive study of the line construction and testified that he had examined the profiles and additional hardships would not be imposed on Gulf States by going under Dixie Electric’s lines. He also estimated that crossing Dixie Electric’s line with a primary single phase line would cost $253 and a three-wire secondary drop would cost $169.
Our review of the record satisfies us that there was ample evidence to support the trial judge’s finding that the only interference and extra expense resulting is that occasioned as a normal incident to competition between the two companies. Implicit in this finding is the conclusion that the use by Dixie Electric of its franchise rights did not materially interfere with the rights of Gulf States in the use of its franchise. We would otherwise not hesitate to enjoin a material interference with the property of the first company if the case were not one of mere inconvenience reasonably incident to competition, nor one where, upon suitable terms, an adjustment in the position of the equipment of the first company would make possible the operation of both companies at the particular place, thereby giving effect to the rights of each under their respective franchises. This in common parlance is simply saying, “Live and let live.”
Appellee calls our attention to Act 266 of 1940 (R.S. 12:401, et seq.) which authorized the creation of electric cooperatives. There authority is given to electric cooperatives to construct, maintain and operate electric transmission and distribution lines along the public rights of way “provided, that such construction and operation shall not interfere with the use and occupancy thereof of other public utilities.” (Emphasis ours)[1]
We are then referred to Black’s Law Dictionary, Deluxe Edition, as to the meaning of the word “interfere” with the reminder that the use of the word “interfere” in the above-quoted statute was not qualified by the lawmaker with the adjective “reasonable.” Learned counsel would have us interpret the word “interfere” to mean as “no interference whatsoever.” We believe that it should be construed with reason and follow the holding of the Third Circuit in Gulf States Utilities Company v. Jefferson Davis Electric Cooperative, Inc., La.App., 230 So.2d 273 (1969). In that case Gulf States also argued that Jefferson Davis Cooperative had no right to construct lines which interfered with their *363 use of the road rights of way. Judge Tate, as author of the opinion there, wrote:
“The trial court properly interpreted the statutory prohibition against constructing lines which ‘interfere’ with those of another utility as contemplating a prohibition only against tmreasonable interference. The statutory prohibition thus does not include such inter-utility parallel and crossover lines reasonably incident to competition, commonly alleviated by inter-utility cooperation and adjustment of the lines so adjacent. Cf., Annotation, Interference by Competitor, 119 A.L.R. 432, 436-439 (1939).” (Gulf States Utilities Company v. Jefferson Davis Electric Cooperative, Inc., La.App., 230 So.2d 273, 275)
For the above and foregoing reasons, the judgment of the District Court denying the permanent and mandatory injunction is affirmed at appellant’s costs.
Affirmed.

. See, also, R.S. 12:428 providing a special means of acquisition of servitude on privately owned immovable property.