McCALEB, Justice.
Louisiana Power and Light Company, hereinafter referred to as Power and Light, is appealing from the dismissal of two petitions brought by it in the district court seeking to have an order of Louisiana Public Service Commission declared invalid, and to have the Commission enjoined from enforcing the order, which commands Power and Light to cease and desist the rendition of electric service to a facility operated by Shell Oil Company, known as “North Terrebonne Gas Processing Plant.” The facts and circumstances from which this litigation emanates are not in dispute and may be briefly stated as follows:
The subject matter of the litigation is a customer service dispute between Power and Light and South Louisiana Electric Cooperative Association, hereinafter referred to as South Cooperative. Both of these companies have non-exclusive franchises from the Police Jury of Terrebonne Parish to do business in the area involved, known as the “Humphrey area”, situated in the vicinity of Highway 90 between Houma, Louisiana and Amelia, Louisiana. Power *601 and Light is a regulated electric public utility company authorized to furnish electric service in 45 parishes of this State. South Cooperative is an electric cooperative association, incorporated originally in 1938 as a non-trading non-profit corporation and later converted, in 1941, into a cooperative non-profit membership corporation pursuant to the Electric Cooperative Law, Act No. 266 of 1940 (now R.S. 12:301-12:330). This cooperative has been furnishing electric power to its members for over 20 years and has been serving the Gibson Terminal of Shell Oil Company (a storage facility) during all that time.
On June 15, 1956 a written electric service agreement was confected between South Cooperative and Power and Light under which the latter agreed to sell to the former electric power and energy for redistribution and resale solely to customers of South Cooperative in the parishes of Terrebonne, Lafourche, St. Mary, St. Martin, Assumption and contiguous areas. This contract is still in full force and effect. Under Article IX thereof it is provided that neither one of the parties is to distribute or furnish electric energy to any person who was receiving electric service from the other at the time of the proposed service.[1]
The Gibson Terminal which, as aforesaid, is an oil storage facility of Shell Oil Company, is located on land leased from South-down, Inc. and its predecessors and Shell, as a member of South Cooperative, has been, and still is, furnished its electric power for this Terminal by the Cooperative.
In 1963, Shell Oil Company and 28 other companies engaged in the oil and gas business entered into an agreement or compact for the construction and operation of a gas processing plant in which the gas secured by the members of the syndicate from wells situated in certain described areas was to be processed by separating the liquid hydro *603 carbons therefrom. Shell was designated as operating agent for the group; it was to purchase the land, furnish the employees and manage the plant, which was to be known as North Terrebonne Gas Processing Plant. In this agreement of co-proprietorship, which was for a duration of twenty years, Shell acquired a 23J^% ownership and the other parties owned the remaining interest in specified percentages as set forth therein. All proprietors contributed to the costs of construction and operation according to their proportionate interests and all shared in the profits and losses in like manner. Thus, albeit the agreement recites that it is not a partnership or joint venture (apparently for tax purposes), the enterprise, in legal contemplation, may well be regarded as either an ordinary partnership, under Article 2801 of the Civil Code, or at least a joint venture. Shell, conformably with the authority vested in it as plant operator for the entity, North Terrebonne Gas Processing Plant, acquired by purchase in its own name a tract of land adjacent to its Gibson Storage Terminal, which tract overlapped a portion of the land leased from Southdown on which it operates the Gibson Terminal. After acquisition of the land on which the processing plant was erected, Shell entered into negotiations for supplying the facility with electric service. Both South Cooperative and Power and Light sought to furnish this electrical energy. In May of 1963 Shell entered into an electric service agreement with Power and Light and, pursuant thereto, the latter constructed facilities (a double circuit, 138,000 volt line was built from the existing line to the substation site, “a transformer 138 to 34,000 volts was installed” and a distribution line was built from this point into the plant site), at a cost of $375,000 to $400,000.
On October 31, 1963, South Cooperative instituted suit against Power and Light in the district court of Terrebonne Parish for injunctive relief. It was claimed therein that Power and Light had breached Article IX of its contract with South Cooperative by supplying electric power to Shell, a customer of the Cooperative, and also by serving two other plants in an area exclusively served by it. The district court issued a temporary restraining order and, when the judge declined to maintain a motion to dissolve this order, Power and Light applied to the Court of Appeal, First Circuit, for writs of prohibition and mandamus. Alternative writs were issued and, upon hearing, the Court of Appeal held that Louisiana Public Service Commission has exclusive jurisdiction over the subject matter of this type of litigation (a customer service dispute) under Section 4 of Article 6 of the State Constitution and R.S. 45 :1163 and 45:1164. In reaching this conclusion, the appellate court relied upon its decisions in Pointe Coupee Electric Membership Corporation v. Central Louisiana Electric Company, La.App., 140 So.2d 683 (cert. denied) *605 and South Louisiana Electric Cooperative Association v. Central Louisiana Electric Company (La.App.) 140 So.2d 687. Accordingly, the court dismissed the suit reserving to Power and Light the right to claim interest, damages and attorney’s fees. See South Louisiana Elec. Coop. Ass’n v. Louisiana P. & L. Co., La.App., 161 So.2d 413.[2] South Cooperative did not exhaust its right to question this decision as it did not apply for a rehearing which, if denied, would have enabled it to invoke our supervisory jurisdiction by petition for a writ of review.
On the contrary, while the suit was pending in the Court of Appeal on writs, South Cooperative abandoned, for all intents and purposes, its rights under the contract with Power and Light, for it petitioned the Public Service Commission to order Power and Light to cease and desist from furnishing electric energy to Transcontinental Gas Pipe Line Corporation, Avondale Shipyards, Inc. and Shell Oil Company on the ground that Power and Light was supplying electricity to these parties in violation of the policy, rules and regulations of the Commission and in an area exclusively served by it. Power and Light filed a plea of lis pendens (which, of course, became moot when the Court of Appeal dismissed the suit and South Cooperative failed to apply for a rehearing) and also an exception of no right or cause of action challenging the authority of the Commission to act upon a customer service dispute in a case brought by an electric cooperative, an unregulated public utility not subject to the Commission’s jurisdiction.
After a hearing on this exception, the Commission found that the complaint did not disclose a violation of any of the Commission’s rules and regulations and that the only law governing the case was R.S. 45 :123 (which we shall discuss in detail later in this opinion). Applying this statute, the Commission maintained the exception and dismissed the petition with respect to Power and Light’s service to Transcontinental Gas Pipe Line Corporation and Avondale Shipyards, Inc., holding that it had not been alleged or shown that these two corporations *607 were, or ever had been, customers of South Cooperative. However, the exception was overruled with respect to the service of Shell Oil Company in view of the allegations of the petition that Shell was an existing customer of South Cooperative at the time Power and Light contracted to furnish Shell with electric service.
Thereafter Power and Light filed its answer denying that the Cooperative was entitled to a cease and desist order. In substance, it contended that R.S. 45:123 was manifestly inapplicable since South Cooperative is not a regulated public utility and, further, because Shell is not the Cooperative’s customer insofar as Shell’s operation of the North Terrebonne Gas Processing Plant facility is concerned. The case was then heard on its merits with respect to these issues and, after considering the evidence, the Commission (with one dissent) entered its Order No. 9498 commanding Power and Light to cease and desist the rendition of electric service to the facility known as North Terrebonne Gas Processing Plant, operated by Shell. The Commission stated:
“From the record it is clear that the CoOp. has indeed been rendering service to Shell Oil Company at the site here in controversy for some years. Power and Light contended, however, that the service now being rendered by them is to a new facility, which is constructed and operated by a syndicate referred to by them as a ‘Joint Venture’, of which syndicate Shell is a member and is in fact the agent and operator.
“It does not appear to us that this defense has merit. The original customer was Shell Oil Company and Shell continues to be the party with whom the utility deals and the party who is responsible for obtaining the utility’s service. It thus appears to us that this is an unwarranted and illegal taking over of an existing customer by an electric utility in contravention of R.S. 45:123, since Power and Light did not at any time apply to or receive from this Commission a certificate of convenience and necessity authorizing it to serve Shell at that location.”
Following the rendition of this order, Power and Light filed a petition in the district court against the Commission seeking to have the order declared invalid and to have the Commission enjoined from enforcing the same. A second petition, identical with the first, was filed by Power and Light except that no injunctive relief was sought. These petitions were consolidated for trial by agreement.
South Cooperative intervened in the case and joined the Commission in filing an exception of no cause of action leveled at the request for injunctive relief. This exception was sustained. An intervention was also filed on behalf of 28 companies, including Shell Oil Company, the co-owners of the facility known as North Terrebonne Gas Processing Plant. Following a trial *609 and submission of the case in the district court the judgment was affirmed. No written reasons were given.
Although Power and Light specify six errors allegedly committed by the Commission and the district court, we think there is only one basic question upon which the correctness of the Commission’s action may be said to depend — that is, whether or not R.S. 45:123 is applicable to the case. This question is divisible into two, or perhaps more, sub-parts — viz.: Is R.S. 45:123 applicable to a customer dispute between an unregulated cooperative electric company and a regulated electric public utility under the jurisdiction of the Public Service Commission? If it is, may Shell, while acting in its capacity as operator of North Terrebonne Gas Processing Plant, be regarded as the customer of South Cooperative by reason of the fact that it is the customer and member of the Cooperative for the furnishing of electricity to its Gibson Terminal oil storage facility?
A regulatory law for the orderly distribution of electricity to consumers in this State was provided by the Legislature in its enactment of Act 254 of 1936. This statute, which has been incorporated in the Revised Statutes under Title 45, Chapter 3, “Electricity”, declares in Section 121 (Section 3 of Act 254 of 1936) that the term “electric public utility” as used in the Chapter means any person furnishing electric service within this State. If considered alone, this definition would include electric cooperatives within its scope as they furnish electric service to their members and are authorized (R.S. 12 :303) to serve other persons than members, not in excess of ten per centum of the number of their respective members. But electric cooperatives cannot be regarded as electric public utilities for three salient reasons — (1) because these cooperatives, operating under the Rural Electrification Act (7 U.S.C.A. Sec. 901 et seq.) were not in existence as such in 1936, and,, hence, were not intended to be public utilities as defined by Act 254 of 1936; (2) because Act 266 of 1940 (now R.S. 12:301— 12:330), under which the electric cooperatives are created, specifically excepts, in R.S. 12:326, cooperatives transacting business in the State from the jurisdiction and control of the Public Service Commission [3] and (3) because Sections 1 and 2 of Act 254 of 1936 (R.S. 45:122 and 45:123) make it clear that the Legislature was referring only to public utilities regulated by the Public Service Commission in its definition set forth in R.S. 45 :121.
R.S. 45:122 declares, in substance, that the Public Service Commission has authority *611 to require electric public utilities to make extensions of their services and facilities “* * * whenever the revenues to be derived from the proposed extensions will be sufficient to provide a fair return upon the fair value of the facilities used and useful in rendering additional service”. This provision was formerly Section 1 of Act 254 of 1936.
The pertinent part of the statute upon which the Commission rested its cease and desist order, R.S. 45:123, which was formerly Section 2 of Act 254 of 1936, reads as follows:
“In order to encourage a further development of coordinated statewide electrification based upon a planned economy, an electric public utility shall not render or extend its electric services or facilities to customers already receiving electric service from another electric public utility without first obtaining a certificate of public convenience and necessity from the Louisiana Public Service Commission. * * *” (Emphasis ours).
It is seen from the foregoing that, in order for the provision to be applicable, it is essential that the electric services or facilities extended by an electric public utility be given to customers already receiving electric service from another electric public utility. But it is suggested that, albeit electric cooperatives are exempt from the jurisdiction of the Public Service Commission, they are, nonetheless, public utilities and, being unregulated as to their rates and services, constitute monopolies contrary to the prohibitions of our Constitution (Section 5 of Art. XIII and Section 14 of Art. XIX).
Statutes similar to R.S. 45:123 have been considered by the courts of last resort in other jurisdictions and those tribunals have held that such statutes do not apply to electric cooperatives and, hence, cannot be enforced against regulated public utilities. See Black River Electric Coop. Inc. v. Public Service Com’n (1961) 238 S.C. 282, 120 S.E.2d 6; Clearwater Power Company v. Washington Water Power Co., 78 Idaho 150, 299 P.2d 484; Socorro Electric Cooperative Inc. v. Public Service Commission, 66 N.M. 343, 348 P.2d 88 and San Miguel Power Ass’n v. Public Service Commission, 4 Utah 2d 252, 292 P.2d 511.
Plowever, we do not deem it important to determine here whether electric cooperatives are public utilities or not. For counsel of South Cooperative, while arguing that electric cooperatives are entitled to protection by the Commission of established customer relationship, declare in their brief that, if R.S. 45:123 is inapplicable, it is only on the basis that electric cooperatives are not public utilities, and they cite in support thereof Garkane Power Company v. Public Service Commission of Utah, 98 Utah 466, 100 P.2d 571. See also cases discussed in annotation 132 A.L.R. 1495. *613 In other words, counsel are saying that inapplicability of the statute cannot be grounded on Power and Light’s (and the intervening gas companies) contention that such non-profit electric organizations are unregulated public utilities and, therefore, monopolies without right of protection, either administratively or at law. But, as we read the statute, it is clear that it extends only to customer disputes between regulated public utilities and, this being so, it matters not whether or not the statute is inapplicable to electric cooperatives because they are not public utilities or because they are unregulated public utilities. In the absence of an applicable statute or violation by Power and Light of a Commission rule or regulation, the Commission was without authority to issue the cease and desist order.
 Nor can the Commission’s order be sustained on the theory that, since Section 4 of Article 6 of the Constitution vests plenary power over all public utilities in the Commission, its action in this case is well within its regulatory jurisdiction. The Commission has the right to order a public utility to cease and desist from a certain course of conduct when, and only when, its act transgresses a law of the State or a reasonable rule or regulation of the Commission. It has no power to deny to such utility the right of serving a customer on the basis of its right to regulate when the regulation applies only to one side. Indeed, the Commission did not ground its decision on its constitutional authority to control Power and Light’s customer dispute with South Cooperative. Its order is based solely on an assumption that R.S. 45:123 is applicable to the case. For our part, we are not disposed to conclude that the Commission is entitled to exercise the constitutional power vested in it over electric public utilities by settling customer disputes with unregulated electric cooperatives when it may not regulate the rates the latter may charge for similar service and when, were the situation reversed, it would be powerless to order the cooperative to comply.[4] This is *615 ■exactly the view of the Supreme Court of South Carolina in its well reasoned opinion in Black River Electric Coop. Inc. v. Public Service Com’n, supra, with which we ,are in complete accord. See also Claiborne Electric Cooperative, Inc. v. Louisiana Power and Light Company, D.C., 155 F.Supp. 644.
Furthermore, we think the holding ■of the Commission that Shell Oil Company is still the customer of South Cooperative insofar as the operations of North Terrebonne Gas Processing Plant are concerned because “* * * Shell continues to be the party with whom the utility deals and the party who is responsible for obtaining the utility’s service” is manifestly incorrect and without sanction. The uncontested evidence is that North Terrebonne Gas Processing Plant is a separate facility and that Shell Oil Company, although operating the same, is performing this function as an agent for either a partnership of oil and gas companies or as a joint venture. In this capacity, Shell was not acting for itself. While it is true that Shell was and is a member of South Cooperative and was and is its customer for the operation of the storage facility known as Gibson Terminal, this docs not mean that it is to be regarded as the Cooperative’s customer for separate and distinct pursuits conducted by it under a mandate from others and on other property, albeit adjacent in location to the oil storage terminal. And the mere fact that it purchased the site for the new operations in its own name, under its appointment as agent by the owners of the gas processing enterprise, furnishes no legal or factual basis for holding either that this was an expansion of Shell’s operation or that, since Shell dealt with Power and Light directly, it was doing so under its status as the Cooperative’s original customer. No one has suggested that the facts herein outlined are unreal or that the agreement between the oil and gas companies was designed to deprive the Cooperative of a preference it would otherwise have had as the supplier of electric energy to Shell at its Gibson storage facility. In these circumstances, the Commission’s ruling is at odds with the admitted facts and, therefore, clearly arbitrary.
For the reasons assigned, the judgment of the district court, affirming the order of the Commission, is reversed and set aside and Order No. 9498 of the Commission is declared invalid and, accordingly, annulled.
On Application for Rehearing. Rehearings denied.

. The contract between South Louisiana and Power and Light provides in Article IX:
“Electric power and energy delivered hereunder is purchased by the Customer for redistribution and resale solely to ultimate consumers located in the aforesaid areas. Contracts for sale by the Customer of any electric power and energy purchased hereunder shall provide that the purchaser shall not resell such electric power and energy.
“Neither party, unless ordered so to do by a lawful order issued by a properly constituted authority, shall distribute or furnish electric energy to anyone who, at the time of the proposed service, is receiving electric service from tlie other, or whose premises are capable of being served by the existing facilities of the other without extension of its distribution system other than by the construction of lines not exceeding three hundred feet in length.
“Neither party, unless ordered so to do by a lawful order issued by a properly constituted authority, shall duplicate the other’s facilities, except in so far as such duplication shall be necessary in order to transmit electric energy between unconnected points on its lines, but no service shall be rendered from such interconnecting facilities in competition with the other party.”

. Tlio author of this opinion is of the view that the Court of Appeal judgment was clearly erroneous as this ease is plainly distinguishable from the Pointe Coupee Cooperative decision, in which it was deduced that the Public Service Commission has exclusive authority to settle customer service disputes under Section 4 of Article 6 of the Constitution, even though the Commission has no regulatory authority over the electric cooperative. The suit by South Cooperative in this matter was an action to restrain Power and Light from breaching its contract in violation of the provisions of Article IX thereof. This contractual provision, manifestly valid, is enforceable exclusively in a judicial proceeding. The contract of the parties is the law between them and a breach thereof is cognizable only by the court having jurisdiction, which is vested with full power to enforce all such stipulations unless they are contrary to some prohibitory law. The decision of the Court of Appeal, of course, is now final and res judicata.

. In addition, R.S. 45:1161(1) redefines a “public utility” as any person, public or private, subject to tlie general jurisdiction of the Public Service Commission “ * * * but not including * * * electric properties owned or operated by rural cooperatives”.

. Counsel for South Cooperative cite and rely upon our decision in Louisiana Tank Truck Car. v. Louisiana Pub. S. Com’n, 244 La. 909, 155 So.2d 15 as authority for a conclusion that, even though the Commission has no jurisdiction over the Cooperative and therefore can make no order requiring it to serve the public, it should nevertheless, under the power vested in it by the Constitution, restrain Power and Light from servicing North Terrebonne Gas Processing Plant. It is our opinion that the cited authority is inapplicable. That case involved simply the question of whether the Commission had authority to revoke an, ex parte order reducing the per gallon rate for transporting petroleum products and reinstating the former rate on the complaint of a private carrier. The court held that the power to reduce or increase rates in the public interest was inherent in the Commission and, since it had the power to reopen the matter on its own motion, it could do so upon the request of a private carrier and that the ultimate ruling of the Commission would not be overturned in the absence of a showing that it was arbitrary, capricious and not in the public interest. In the matter at hand, the *615 Commission would liave had no right on its own motion to deny Power and Light the right to contract to furnish electricity to North Terrebonne Gas Processing Plant as the Cooperative had no exclusive franchise to serve the Humphrey area.