11 JOHNSON, Justice. *
This matter is a direct appeal from the district court pursuant to Article IV, Section 21(E) of the ^Louisiana Constitution.[2] The City of Plaquemine and the City of Kaplan filed separate complaints with the Louisiana Public Service Commission (hereinafter referred to as “Commission”) alleging that Louisiana Power and Light (L.P. & L. now ENTERGY) and Southwest Louisiana Electric Membership Corporation (SLEMCO) were providing electrical service to locations which were within the municipalities’ exclusive service rights under LA. R.S. 45:123. Both L.P. & L. and SLEMCO filed Exceptions of Lack of Subject Matter Jurisdiction. The Commission granted the Exceptions. Both municipalities appealed the dismissal of their complaints to the Nineteenth Judicial District Court, which affirmed the Commission’s ruling.
FACTS:
The City of Plaquemine, (Iberville Parish), through its City Light and Water Plant provides electric power to its customers. At one time, they provided service to K & W Fishing Tool, Inc. The electricity was provided by an electric distribution line directly in front of the business, parallel with Louisiana Highway 405. The electrical distribution line was in existence and operating prior to January 1, 1970. After this company went out of business, River Road Aviation occupied the premises and contracted with Louisiana Power & Light (L.P. & L) for service in early summer 1993. The City of Plaquemine alleges that L.P. & L. extended its existing distribution line to the rear of the property. The City of Plaquemine also alleges that it maintained its transformers on the building and that the metering was left on the building as well. However, after Hurricane Andrew the metering and the service lines were removed. The City of Plaquemine still has its utility poles and city owned security lights on the property. The City of Plaquemine and L.P. & L do not have a franchise or any contract between them. They are competing providers. The City of Plaquemine sent a Notice of Objection to L.P. & L. and ^subsequently filed its complaint with the Louisiana Public Service Commission. The City of Plaque-mine alleges that L.P. & L. violated La. R.S. 45:123[3], and the Louisiana Public Service *1076 ^Commission’s General Order of March 12, 1974, “Duplication of Electric Service” which provides in part:
“It is the opinion of this Commission that in order to effect economies in the service of electricity, and thus, keep rates therefor within reasonable bounds, uneconomic and wasteful practices should be prohibited. It is determined that the paralleling and ■ duplication of existing transmission or distribution lines as defined in Louisiana Revised Statutes 45:123 or the extensions of either by electric public utilities to serve customers readily accessible to like facilities of an electric public utility already providing service in the immediate area is not in the public interest, and that such practices ultimately lead to wasteful completion and unwise expenditures and investments which become a burden upon the rate payers.”
In the consolidated case, the City of Kap-lan filed a complaint against L.P. & L. and Southwest Louisiana Electric Membership Corporation. The City of Kaplan complains that SLEMCO violated the “300 foot rule” as outlined in LA. R.S. 45:123 and that this organization was duplicating services. The City of Kaplan argues that they should be the service provider to the Liberty Rice Mill because this organization is within its jurisdiction. LIBERTY is building a new mill and was one of Kaplan’s existing customers. SLEMCO had offered and is now furnishing electric power to this location. The City of Kaplan also complains that there is a violation of related Commission orders, i.e. Louisiana Public Service Commission’s General •Order of October 7, 1993 regarding La. R.S. 45:123.
“In re: Generic Hearing to Discuss Factual Scenarios Which Might Arise in Administering LA. R.S. 45:123.
(Decided at the October 7,1993 Business and Executive Session.)
LA. R.S. 45:123 commonly referred to as the ’300 foot rule’ was enacted to protect, the electric utility customers from the cost of duplication of facilities. Act 34 of the 1970 Louisiana Legislature gave the Louisiana Public Service Commission the authority to regulate electric public utilities, hence, it is the responsibility of the Commission to facilitate La. R.S. 45:123. In the process of carrying out enforcement of *1077 the ‘300 foot rule’ quite often the LPSC staff finds itself in the gray area and ends up with varying interpretations of the law. This has resulted in many costly disputes paid for by the ratepayer. In an effort to resolve these disputes, the LPSC staff held a hearing on July 29, 1993 on these ’300 foot rule’ matters.
As a result, it appears necessary and desirable for this Commission to adopt an order pertaining to definitions and interpretations of the different scenarios in which La R.S. 45:123 applies.
It is accordingly ordered that the following definitions and interpretations will be used by utility companies and LSPC staff when interpreting La. R.S. 45:123.
Point of Connection — Meter location or point where electric company facilities meet facilities owned by customer.
15Service Location (Premise) — That portion of the property upon which an electric utility has extended service which is located within a 300’ radius measured from the point of connection. In addition, that portion of the property located within 300’ of an electric line (whether owned by the utility serving the point of connection or privately owned) located on said property shall be included in the definition of ‘service location’ or ‘premise’.
1) A point of connection shall be continued to be served by an electric utility even if the structure served is removed and a new structure is built within the service location.
2) Point of connection removed at request of owner from abandoned service location, shall be served by original electric service provider if new structure is built at this service location.
3) An adjoining electric utility shall not serve the point of connection presently or previously served by another electric [utility] through the use of master meters or by placing point of connection outside of 300 feet, or [sic] service location.
4) A point of connection and service line removed at the serving utilities [utility’s] own motion shall constitute abandonment and any new or existing structure shall be served at customer’s choice. Exception to this will be where an electric utility has to remove this line for safety or liability.”
The Louisiana Public Service Commission, relying on Louisiana Power and Light v. Louisiana Public Service Commission, 250 La. 596, 197 So.2d 638 (1967), decided that it did not have jurisdiction over this dispute because it could not enforce any ruling against a non-jurisdictional utility company. The trial court agreed. Entergy Louisiana, Inc. formerly Louisiana Power and Light, (L.P. & L.) argues that a dispute between a municipality and an electric utility could not be decided by the Commission. Rather the district courts maintain exclusive jurisdiction in this matter under LA Constitution, Art. IV, sections 21(B) & (C). When a territorial dispute arises between two utilities and only one of which is within the jurisdiction of the Commission, the district court is the forum of exclusive original jurisdiction. Therefore, the Commission would not have authority to decide this matter.
The City of Plaquemine and the City of Kaplan primarily rely on Pointe Coupee Electric Membership Corporation v. Central Louisiana Electric Company, 140 So.2d 683 (La. 1st Cir. Ct. of App.1962) and La. R.S. 45:123 to support their argument that the Louisiana Public Service Commission should decide this matter.
SUBJECT MATTER JURISDICTION:
The trial court was correct in its ruling that the Public Service Commission does not have jurisdiction over municipalities and therefore could not rule in this case. Although the cities rely | ¡,on LA.R.S. 45:123, the proper forum is still the state court and not the Commission.
In Central Louisiana Electric v. PSC, 601 So.2d 1383 (La.1992), this Court reasoned that “LA R.S. 45:1163 authorizes the Louisiana Public Service Commission to exercise all necessary power and authority over electric utilities for the purpose of fixing and regulating rates charged and services furnished. Thus, the Louisiana Public Service Commission has constitutional and statutory jurisdiction over subject matters which principally involve the right to fix and regulate rates charged by and services furnished by public *1078 utilities. The Legislature has never ‘provided by law’ for the Louisiana Public Service Commission to exercise jurisdiction over other such subject matters and areas of litigation of which public utilities are involved, such as tort actions and contract disputes. It is therefore necessary at the outset to determine the relief demanded by all parties in order to resolve the subject matter jurisdiction.” [4]
More importantly the Louisiana Constitution prohibits the Commission from acting. Central, supra, clearly states that “La. Const, art. IV, section 21 C withholds from the Louisiana Public Service Commission the power to regulate any public utility owned, operated or regulated by the governing authority of a municipality and that LA.Rev. Stat. 45:123 reaffirms the authority of municipalities with respect to franchises within the corporate limits, the Louisiana Public Service Commission adhered to its previously announced position of refusing to construe agreements between municipalities and public utilities or to resolve disputes arising under such agreements.”
La Const. Art. IV, sec 21 B & C specifically provides:
“(B) Powers and Duties. The commission shall regulate all common carriers and public utilities and have such other regulatory authority as provided by law. It shall adopt and enforce reasonable rules, regulations, and procedures necessary for the discharge of its duties, and shall have other powers and perform other duties as provided by law.
(C) Limitation. The commission shall have no power to regulate any common carrier or public utility owned, operated or regulated on the effective date of this 17Constitution by the governing authority of one or more political subdivisions, except by the approval of a majority of the electors voting in an election held for that purpose, however, a political subdivision may reinvest itself with such regulatory . power in the manner in which it was surrendered. This Paragraph shall not apply to safety regulations pertaining to the operation of such utilities.”
The language in the Constitution is clear and the Commission has no authority to operate outside of its constitutional mandate.
The Cities, in this case, seek to have the Commission rule that L.P. & L. has violated the “300 foot rule” as provided for in La. R.S. 45:123. They argue that a violation of this rule should include the providers discontinuing service to the entities in question, K & W Fishing Tool, Inc. and the Liberty Rice Mill. Although the Cities argue that the Commission has jurisdiction to interpret LA. R.S. 45:123, this is clearly a matter of statutory interpretation and the district courts have original jurisdiction. Article IV, section 21(B) and (C) of the Louisiana Constitution clearly state that the Commission has no authority over a political subdivision. Practically speaking the Cities could get two bites at the apple. If the Commission ruled against Entergy, formerly L.P. <& L., it would be bound by the decision. However, if the Commission ruled in favor of L.P. & L., it could not force the municipalities to obey its decision. This could lead to total confusion and would not serve the interests of the public. Although, the Commission has expertise in this area, then- lack of enforcement powers precludes them for rendering decisions against municipalities. Also, their charge does not include statutory interpretation or enforcement as would be warranted in this instance.
In Central, this Court clearly states that “The issues of validity and enforcement of contracts and the interpretation of statutes and municipal charters are generally civil matters over which the district courts have original jurisdiction.” La Const, art. V, section 16 vests the “district courts with original jurisdiction of all civil and criminal matters unless there is other jurisdictional authoriza *1079 tion in the Constitution.” See Central, supra. Clearly the Commission does not have Constitutional power over the municipalities and therefore could not enforce any rulings in these cases. Also these cases do not involve the rule making power of the Commission. Although the Cities argue that the Commission’s authority has been extended to cable companies, this holds little merit in light of the statutory implications in this case. Louisiana Cablevision, et. al. v. Louisiana Public Service Commission, 493 So.2d 555 (La.1986), involves a contract between cable operators with utility companies and FCC regulations. kAte° the rates, terms and conditions of the pole attachment agreements were to be decided by the Commission. This area was clearly within the Commission’s purview and the case is distinguishable from the one at bar.
DECREE
We conclude, that the District court has jurisdiction to adjudicate this matter and the Public Service Commission does not have any authority provided by law to regulate municipalities in this regal’d. For the foregoing reasons, we affirm the ruling of the Trial Court.
AFFIRMED.
CLAIBORNE, J., Ad Hoc., not on panel.
CALOGERO, C.J., dissents.

 Judge Graydon K. Kitchens, Jr., 26th Judicial District Court and Judge Ian W. Claiborne, 18 th Judicial District Court, participating as associate justices ad hoc in place of Justice Jack C. Watson and Justice E. Joseph Bleich. Claiborne, J. ad hoc not on panel. Rule IV, Part 2, Section 3.

. LA Const. Art. 4, section 21 provides in part:
"(E) APPEALS. Appeal may be taken in the manner provided by law by any aggrieved party or intervenor to the district court of the domicile of the commission. A right of direct appeal from any judgment of the district court shall be allowed to the supreme court. These rights of appeal shall extend to any action by the commission, including but not limited to action taken by the commission or by a public utility under the provisions of Subparagraph (3) of Paragraph (D) of this Section.”

. LA. R.S. 45:123 provides:
"Stabilizing service by electric public utilities; extension and construction of facilities, regulation thereof; limitations on municipally-owned or operated utilities....
"A (1) No electric public utility shall construct or extend its facilities or furnish or offer to furnish electric service to any point of connection which at the time of the proposed construction, extension or service is being served by, or which is not being served but is located within three hundred feet of an electric line of another electric public utility, except with the consent in writing of such other electric public utility. However, nothing contained herein shall preclude:
(a) Any electric public utility from extending service to an applicant for service at an unserved point of connection located within three hundred *1076 feet of an existing electric line of such electric utility, unless:
(1) Such line was not in operation on April 1, 1970, and
(ii) The point of connection is located within three hundred feet of an existing electric line of another electric public utility which line was in operation on said date or,
(b) Any electric public utility from extending service to its own property or to another electric public utility for resale.
(2) Further, any consumer receiving electric service from a public utility that is subject to the jurisdiction of the Louisiana Public Service Commission who feels aggrieved with the electric service being received by him may apply to the Louisiana Public Service Commission for an order directed to his present supplier to show cause why the consumer should not be released from said supplier, and if the commission shall find that the service rendered to such consumer is inadequate and will not be rendered adequate within a reasonable time the release shall be granted.
B. As used in this Section, 'electric line’ means a line constructed and operated for the transmission or distribution or transmission and distribution of electricity, and that was not originally constructed for the principal purpose of preempting territory.
C. Nothing in this Section shall either prohibit or mandate the performance by any parish, municipality, political subdivision, or combination thereof, of any agreement for the sale of electric power executed prior to January 1, 1984, or any renewal of such agreement. Nothing in this Section shall prohibit or mandate in the performance of such agreement the furnishing of service to persons and business organizations being served by another electric public utility.
D. Notwithstanding any other provision of this Section, any municipally-owned or operated public utility may furnish or offer to furnish electric service to any point of connection for a retail consumer who is not being served by another utility without the necessity of obtaining written consent of any other utility if such point of connection is within one mile of such municipality’s corporate limits, as such corporate limits of a municipality with more than fifty megawatts of peak load exist on the effective date of this Section and on every third anniversary date of the effective date of this Section, and as such corporate limits of all other municipalities which have fifty megawatts or less of peak load now or in the future exist from time to time.
E. Nothing in R.S. 45:121, 45:123, 45:1161, 45:1175 or R.S. 12:426 shall alter the rights or authority of municipalities with respect to franchises within the corporate limits of a municipality as such limits exist from time to time."

. La. R.S. 45:1164 B provides:
"The provisions of this Section and R.S. 45:1163 shall not apply to any public utility, the title to which is in the state or any of its political subdivisions or municipalities (emphasis added), unless the electors of such are customers of the public utility have manifested their approval of being under the jurisdiction of the public service commission as is required by Article IV, Section 21(C) of the Constitution of Louisiana in the manner provided by R.S. 45: 1164.1 through R.S. 45: 1164.13”