Dear Mrs. Moseley:
This office is in receipt of your request for an opinion of the Attorney General in regard to the status of the Cataylst-Old River Hydroelectric Plant (hereafter the plant) located in Concordia Parish, also known as the Sidney Murray, Jr. Hydroelectric Plant. You state that this plant manufactures and sells electricity, and you ask whether the plant should be classified as a private business enterprise or as a public service utility for purposes of ad valorem taxation.
At the outset, note that the assessors of this state are charged under Article VII, Section 18 of the Louisiana Constitution (1974) with the duty to appraise and assess all property within their respective parishes, except public service properties. Public service properties are appraised and assessed by the Louisiana Tax Commission on or before September first of each calendar year. See LSA-R.S. 47:1855.
LSA-Const. Art VII, § 18 (1974) provides classifications of property subject to ad valorem taxation and states, in pertinent part:
§ 18. Ad Valorem Taxes
 Section 18. (A) Assessments. Property subject to ad valorem taxation shall be listed on the assessment rolls at its assessed valuation, which, except as provided in Paragraph (C), shall be a percentage of its fair market value. The percentage of fair market value shall be uniform throughout the state upon the same class of property.
 (B). Classification. The classifications of property subject to ad valorem taxation and the percentage of fair market value applicable to each classification for the purpose of determining assessed valuation are as follows:
 Classifications Percentages
 1. Land 10% 2. Improvements for residential 10% purposes 3. Electric cooperative properties, 15% excluding land 4. Public service properties, 25% excluding land
5. Other property 15%
 The legislature may enact laws defining electric cooperative properties and public service properties . . . . (Emphasis added).
At issue is whether the plant falls within the fourth or fifth classification under subpart (B) quoted above. The import of this determination is two-fold, as first if the plant is "other property" and not "public service property" then for purposes of appraisal and assessment the property falls initially under the control of the local assessor and not the Louisiana Tax Commission. Second, such a determination would require the assessor to impose the ad valorem taxation percentage of 15 percent and not 25 percent upon the subject property.
The plant is a "for profit" business corporation which sells up to 94% of the entire output of the facility to LPL and the remaining amount to the city of Vidalia for resale. The corporation is a wholesaler rather than a retailer as the plant does not sell directly to consumers. The latter statement is determinative of the issue, for the following reasons.
The Louisiana Constitution as quoted above provides that the legislature may define "electrical cooperative properties and public service properties". Pursuant to this constitutional authority, the legislature has placed two definitions pertinent to your inquiry within the framework of Title 47:1851, et seq. governing the assessment of public service properties. These definitions state:
 M. "Public service properties" means the immovable, major movable, and other movable property owned or used but not otherwise assessed in this state in the operations of each airline, electric membership corporation, electric power company, express company, gas company, pipeline company, railroad company, telegraph company, telephone company and water company. For each barge line, towing company or private car company, only the major movable property owned or used but not otherwise assessed in this state in interstate or inter-parish operations shall be considered as public service property. See LSA-R.S. 47:1851(M).
 * * * * * E. "Electric power company" means a company primarily engaged in the business of manufacturing, generating, supplying, or manufacturing, generating and supplying electricity for light, heat, or power to consumers in this state. See LSA-R.S. 47:1851(E).
The plant is not a "public service property" for purposes of ad valorem taxation as the plant does not sell electricity directly to consumers, but rather wholesales to retailers. Accordingly, it is our opinion that the property of the plant is "other property" subject to assessment pursuant to Article VII, Section 18, (B) 5 quoted above, which is 15% of fair market value.
Finally, for your further information we attach a copy of an opinion issued by the staff of the Louisiana Public Service Commission in which the author concluded that the Commission lacks regulatory authority over the Catalyst plant specifically on the basis that the plant is not a "public utility service". Language of that opinion which is supportive of our own conclusion herein provides:
 In G.S.U. v. La P.S.C., 82 So.2d 250 (1952, S.C.), the Louisiana Supreme Court refused to classify a service as one being subject to the regulation by the Commission because it was not held out to the general public as a public utility service and it was not offered to all members of the public who might seek the service. See also 64 Am.Jur. 2d, Public Utilities, Sec. 1; 26 Am.Jur. 2d, Electricity, Gas and Steam, Sec. 19 and 20; and 73b C.J.S., Public Utilities, Sec. 1-3. The general rule is stated thus:
 ". . . . the principal determinative characteristic of a public utility is that of service to, or readiness to serve, an indefinite public (or portion of the public as such) which has a legal right to demand and receive its services or commodities. There must be a dedication or holding out, either express or implied, of produce or services to the public as a class." (64 Am.Jur. 2d, Sec. 1).
 The above facts indicate Catalyst does not hold itself out as providing power to the general public or a portion thereof. (Emphasis added); see attached Louisiana Public Service Commission correspondence dated June 30, 1988, page 4.
We hope the foregoing cited authority and analysis sufficiently addresses your concerns in this matter. Should you have additional questions, please contact this office.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
cc: La. Tax Commission
June 30, 1988
Union Bank Individually and as Agent for Standard Chartered Bank, Barclays Bank, PLC, Commonwealth Bank of Australia New York Branch, and the Banks that may become a party to the Loan Agreement 445 South Figueron Street Los Angeles, CA 90017
Catalyst Old River Hydroelectric Limited Partnership 409 Texas Street Vidalia, LA 71373
Re: Old River Hydroelectric Project
Gentlemen:
You have requested an opinion from the staff of the Louisiana Public Service Commission ("Commission") concerning its possible jurisdiction over the following activities of Catalyst Old River Hydroelectric Limited Partnership ("Catalyst"): owning or operating the Vidalia Hydroelectric Project ("Project") and developing, transmitting, distributing and selling the electric power generated at this project — for sale under separate contracts. only, one to Louisiana Power and Light Company ("LPL") and to the Town of Vidalia ("Vidalia") and borrowing funds to finance the construction of the project.
LPL and Vidalia will in turn sell the power to its retail customers. LPL will have first priority in purchasing approximately 90% of the power from the Project. The remainder of the power output will be purchased by Vidalia, which may be greater or lesser than the demands upon the Vidalia system. Therefore, Vidalia will enter into a "load-swing" agreement with a public utility to levelize the quantity that remains for consumption within the Vidalia system. There will be no retail sales of power by Catalyst.
In fact, there will be no other sales of power from the Project.
Catalyst is a co-licensee of the Federal Energy Regulatory Commission ("FERC") along with Vidalia "for the purpose of constructing, operating and maintaining dams, water conduits, reservoirs, power houses, transmission lines or other project works necessary or convenient . . . the development, transmission and utilization of power . . . ". (16 U.S.C. § 797c). FERC has exclusive jurisdiction over the foregoing licensed activities. Board of Electric Light Commissioners v. McCarren,563 F. Supp. 374 (D.C. Ver. 1982) affirmed 725 F.2d 176. Additionally, the LPL and Vidalia power purchase contracts were submitted to FERC as wholesale power contracts and were so accepted by FERC.
Under 16 U.S.C. § 812, a licensee is required to "abide by such reasonable regulation of the services to be rendered to customersor consumers of power, and of rates and charges of payment therefor, as may from time to time be prescribed by any duly constituted agency of the State . . ." The underlined words appear to refer to retail sales. LPL and Vidalia will not consume the power they purchase from Catalyst but will instead sell it retail to their various customers who will actually consume the power.
Also, under 16 U.S.C. § 812, if an appropriate state agency (i.e. the Commission) has not been authorized or empowered "to regulate and control the services to be rendered by such licensee or by its customer engaged in public service, or the rates and charges of payment therefor, or the amount or character of securities to be issued . . .", the jurisdiction over such activities vests with FERC. The "customer(s) engaged in public service" are Vidalia and LPL. (As indicated later, Vidalia enjoys a state constitutional exemption from regulation.) However, the Commission has in the past and does at present exercise full jurisdiction over LPL which is a "customer" of Catalyst and "engage(s) in public service".
In its order of August 7, 1985, the Commission certificated and approved the power contract between LPL and Catalyst conditioned upon the following:
 1) LPL assumes no risk for any possible increase in construction costs;
 2) LPL has no obligation to pay more for power than that set forth in the contract approved; and
 3) LPL is obligated to pay only for power received.
In this manner the Commission exercised its responsibility of assuring a fair and just rate to the customers of LPL by regulating this transmission of power into the LPL system. The ratepayers of LPL are not "at risk" under this contract and the PSC order. No apparent public policy would be served by now attempting to regulate Catalyst or the Vidalia Project. Accordingly, the Commission also evidenced an apparent intent to exercise jurisdiction only to the extent of the volume and price of power approved in the LPL-Vidalia contract, and not otherwise over the ownership, development, operation and maintenance of the project or the transmission of power from this Project.
The public utility activities of Vidalia are totally excluded from the Commission's jurisdiction by virtue of ArticleIV, Section 21c of the Louisiana Constitution. Therefore, Vidalia's purchase of power from the Project and all of its activities in its capacity as a FERC co-licensee of the project are not subject to regulation by the Commission.
Under Vidalia's contract with Catalyst, Vidalia may be required to take "any action" for the benefit of the Project. Any such action would apparently be beyond the jurisdiction of the Commission. Under Louisiana Power Light Company v. Louisiana Public Service Commission, 250 La. 956, 197 So.2d 638 (S.C., 1967) the Commission appears to be without authority to regulate the activities of Catalyst since the Commission has no jurisdiction over its co-licensee, Vidalia.
The term "public utility" is not defined in the Louisiana Constitution or the statutes. Art. IV, Sec. 21b of the Louisiana Constitution simply states that "the Commission shall regulate all . . . public utilities . . .".
The pertinent statutes merely recite that a public utility is a party "subject to the general jurisdiction of the Commission . . ." (R.S. 45:1121, 1161(1) and 1163)
In G.S.U. v. La P.S.C., 62 So.2d 250 (1952, S.C.), the Louisiana Supreme Court refused to classify a service as one being subject to regulation by the Commission because it was not held out to the general public as a public utility service and it was not offered to all members of the public who might seek the service. See also 64 Am.Jur. 2d, Public Utilities, Sec. 1; 26 Am.Jur. 2d, Electricity, Gas and Steam, Sec. 19 and 20; and 73b C.J.S., Public Utilities, Sec. 1-3. The general rule is states thus:
 ". . . the principal determinative characteristic of a public utility is that of service to, or readiness to serve, an indefinite public (or portion of the public as such) which has a legal right to demand and receive its services or commodities. There must be a dedication or holding out, either express or implied, of produce or services to the public as a class." (64 Am.Jur. 2d, Sec. 1)
The above facts indicate Catalyst does not hold itself out as providing power to the general public or a portion thereof.
The Vidalia Project is distinguished from the Sabine River Authority. The Louisiana Legislature did not classify the Sabine River Project as a public utility; it, however, expressly mandated that its rates be regulated by the Public Service Commission (R.S. 38:2325)k. This legislative mandate is apparently authorized by Article IV, Section 21b of the Louisiana Constitution which recited in part that the Commission shall "have such other regulatory authority as provided by law".
Likewise, the Vidalia Project is distinguished from the activities of Cajun Electric Cooperative. Neither Catalyst nor the Vidalia Project is under the control of, nor affiliated with, LPL. The affiliation between Cajun Electric and the purchasers of its power is well known.
For the foregoing reasons, it is the opinion of the Commission Staff that Catalyst is not a public utility under R.S.45:121 or 1161(1) and the activities of Catalyst, as described above, including financing of the project, are not subject to regulation by the Commission. The Commission of course continued its jurisdiction over LPL, including its contract to purchase power from the Vidalia Project to the extent of the Commission's imposition of ongoing conditions on this contract.
This opinion does not in any manner affect or alter the order, including the conditions therein, of the Commission dated August 7, 1985 approving the contract between LPL and Catalyst. As provided in the order, LPL assumes no risk for any possible increase in construction costs and LPL has no obligation under the contract or the order to pay more than the contract price, and then only for power actually delivered. The LPL power purchase contract remains a fixed price power contract.
Because the Commission, not this staff, has the authority to render decisions on matters of jurisdiction, it follows that this letter is an opinion only and is not binding on the Commission.
This opinion is subject to change upon the enactment of relevant federal or state legislation or the rendition of relevant opinions by the federal or state courts. Finally, this opinion is restricted to the specific contracts. The factual circumstances existing in this matter are so unique that this Staff opinion should be deemed to have no precedential value. Therefore, the opinion is subject to change if Catalyst increased the number or nature of the entities to which it sells power.
Sincerely yours,
 Marshall B. Brinkley Secretary